133 U.S. 553
 10 S.Ct. 374
 33 L.Ed. 740
 SEARL
v.
 SCHOOL-DIST. No. 2.[1]
 March 3, 1890.
 
 School-district No. 2, in the county of Lake and state of Colorado, filed its petition in the county court of that county against R. S. Searl, stating that long prior to the 1st day of July, 1881, it had been, and then was, a school-district duly and regularly organized; that on July 1, 1881, one Frances M. Watson was in the actual possession and occupancy, under a deed of conveyance to her, of certain lots in a certain block of an addition to the city of Leadville; that on the same day one Schlessinger was in the actual possession and occupancy, under deed of conveyance to him of certain other lots; that said Watson and Schlessinger then were, and they and their grantors had for a long time prior thereto been, in the actual possession and occupancy of said lots, claiming the ownership thereof; that on that day the board of directors of the school-district, having been duly authorized and directed so to do, purchased the lots from Watson and Schlessinger, and they were conveyed to the district, the said lots being contiguous, and together constituting but one tract or lot, not exceeding one acre; that the lots were situated within the boundaries of the school-district, and were purchased for the purpose of a school lot upon which to locate and construct a school-house for the benefit of the school-district, and the people resident therein; that the school-district entered into possession and occupation of the land on July 1, 1881, and proceeded to and did construct thereon a large, costly, and valuable school-house, and ever since that time had been and now is in the possession and occupancy of said land, using the same for the purposes of a school; that since the purchase and entry into possession by the school-district the defendant, Searl, had acquired the legal title to the lots composing the school lot, the full title to the same having become vested in him on the 2d day of February, 1884; "that he is now the owner of said property, and that the title thereto acquired by your petitioner as aforesaid has wholly failed; that your petitioner made the purchases, entered into the possession; and constructed the school-house aforesaid in good faith, believing that it had good right to do so; that said school-house is located with reference to the wants and necessities of the people of each portion of said district, and was at the time of said purchases and is now necessary for the school purposes of said district, and that said land and school lot contain no more than is necessary for the location and construction of the school-house aforesaid and the convenient use of the school; that the compensation to be paid for and in respect of the property aforesaid, for the purposes aforesaid, cannot be agreed uponb y your petitioner and the said defendant, the parties interested; and that the said defendant is a non-resident of the state of Colorado." Petitioner then averred that the value of the property did not exceed the sum of $2,000, and prayed that the compensation to be paid by it to defendant for and on account of said property be assessed in accordance with the statute. The defendant appeared, and on his application the cause was removed into the circuit court of the United States for the district of Colorado. Upon the trial before the circuit judge and a jury, it was 'agreed and admitted, among other things, that the premises appropriated were necessary for the petitioner, and were taken for public use.' And the following stipulation in writing was offered and read in evidence: 'For the purposes of the present hearing and trial only of the above-entitled action or proceeding, either in this court, where it is now pending, or in the supreme court of the United States, where it may be taken on appeal or writ of error, the following facts are agreed upon by and between the respective parties hereto, to-wit: First. That a receiver's receipt was issued for the Sizer placer, United States survey No. 388, on the 16th day of April, A. D. 1881, out of the district land-office of the United States at the city of Leadville, in the state of Colorado, to one Isaac Cooper, claimant. Second. That on the 18th day of May, A. D. 1881, a United States patent was issued to the said Isaac Cooper for the said Sizer placer. Third. That the land sought to be condemned in the present proceeding is a part of the said Sizer placer. Fourth. That since the 20th day of November, A. D. 1882, and before the institution of this proceeding, the said Isaac Cooper conveyed to the said R. S. Searl the said Sizer placer, and the said Searl by virtue thereof is now the owner and holder of the said patent title thereto. Fifth. That prior to the application for a patent to the said Sizer placer, and up to the time when the said school board purchased the same and took possession thereof, the land herein sought to be condemned was occupied, possessed and improved, and the ownership thereof claimed, by persons holding under what was called and known as a 'squatter title.' Sixth. That on or about the 1st day of July, A. D. 1881, the said school board purchased and took conveyances of the land now sought to be condemned, with the buildings and improvements thereon, made and erected by the said squatter occupants, from said occupants, and paid therefor the sum of thirty-five hundred ($3,500) dollars. Seventh. That on or before the 30th day of July, A. D. 1881, the said school board went into actual possession of the lots described in the petition herein, and immediately commenced to build; and on the 30th day of January, A. D. 1882, prior to the institution of these proceedings, completed improvements suitable and appropriate for educational purposes, at a cost to the said school-district of forty thousand ($40,000) dollars, which property it has since possessed and occupied, and still occupies, for school purposes. Eighth. That at the time of the commencement of this action and the institution of these proceedings in condemnation, the land described in the petition herein, together with the improvements thereon so made by the school board as aforesaid, was of the value of forty thousand ($40,000) dollars. Ninth. That at the said times of taking possession, and at the time of the commencement of this action and the institution of these proceedings in condemnation, the land described in the petition herein, without the improvements thereon made by the school board, was of the value of three thousand ($3,000) dollars, and that the area of same is less than one acre. Tenth. That petitioner had knowledge of the issuance of a United States patent, covering the property sought to be condemned, prior to the purchase of the title which its ubsequently purchased, and which was known as the squatter title. That prior to such purchase petitioner employed and paid reputable counsel to investigate said title; that the counsel so employed reported in favor of the validity of the so-called squatter title, and against the validity of the United States patent; that, believing said so-called squatter title to be better than the title conveyed by United States patent, petitioner purchased the same; that after said purchase petitioner subscribed to the funds of an association organized for the purpose of endeavoring to defeat said patent title. Eleventh. That, prior to the commencement of and during the erection of the school building now standing on the land sought to be condemned, the board of school directors of petitioner was notified on behalf of respondent, who at that time owned an equitable interest in the said property, and on behalf of respondent's grantors, that any building said school-district might erect on said lots would be erected at the peril of the said school district, and would be claimed, when completed by said respondent and his grantor; but the said school-district, having purchased the said lots of the squatters in possession as aforesaid, and believing that it had the better title thereto, proceeded, notwithstanding such notice, and made and erected said improvements as aforesaid. And in view of the statute, (Dawson's Colo. Code, p. 80, § 253,) and for the purpose of putting as speedy an end to contention as possible, it is further stipulated that the foregoing values may be taken as the actual values at the time of the trial of this suit, and that the property sought to be condemned is for public use, and, within the meaning of the law, is necessary for the school-district. Twelfth. That R. S. Searl is now, and was at the time of the commencement of these proceedings, a citizen and resident of the state of Kansas.'
 The bill of exceptions also states that 'the said defendant, R. S. Searl, introduced further evidence tending to show that he became the legal owner of the premises on the 2d day of February, 1884, and commenced his action of ejectment on the 24th of March, 1884, which was at issue and set for trial in this court on the 11th day of June, 1884; that petitioner filed bill for injunction and obtained writ of injunction restraining trial of ejectment suit on the 7th of June, 1884, and commenced these proceedings on the 9th of June, 1884.' The defendant requested the court to give to the jury a number of instructions, which are omitted in view of the grounds of decision here. The court refused these instructions, and charged the jury generally, and instructed them that the form of their verdict should be as follows: 'We, the jury, find—First, that the accurate description of the property sought to be condemned in this action is lots 812, 814, 816, 818, and the north 13.6 feet and the east 35 feet of lot 810, North Poplar street, and lots 211 and 213 East Ninth street, in Coopers' subdivision of the surface of the Sizer placer, U. S. survey No. 388, situate in the county of Lake, and state of Colorado, together with the improvements thereon. Second. That the value of said property at this date is $3,000.' To the giving of this instruction, and to the refusal to give those prayed by the the defendant, the defendant, by his counsel, then and there excepted. The jury thereupon returned a verdict in the sum of $3,000, and judgment was rendered thereon that the petitioner, upon 'the payment of the amount of the said verdict to the said respondent, or the deposit of the said amount in this court within thirty days hereafter, shall be, and it hereby is, invested with the fee in and to said premises; and, it appearing that the said petitioner is in possession, it is further considered by the court that, upon the payment or deposit of the said sum of money within the time aforesaid, [said petitioner shall,] retain possession of and hold the premises aforesaid, with all the right and interests thereto belonging and appertaining.' To review this judgment, a writ of error was sued out from this court.
 F. W. Owens and S. P. Rose, for plaintiff in error.
 [Argument of Counsel from pages 558-560 intentionally omitted]
 C. S. Thomas, for defendant in error.
 Mr. Chief Justice FULLER, after stating the facts as above, delivered the opinion of the court.
 
 
 1
 Upon the conceded facts, unless the plaintiff in error was entitled to be compensated for the school-house in question, the instruction limiting the recovery to $3,000 was correct, and the judgment must be affirmed. The constitution of the state of Colorado provides 'that no person shall be deprived of life, liberty, or property without due process of law;' and 'that private property shall not be taken or damaged, for public or private use, without just compensation.' Article 2, §§ 15, 25, pp. 34, 35, Gen. St. Col. 1883. Did the just compensation thus secured to the owner of property, taken in the exercise of the power of eminent domain, include in this instance payment to the plaintiff in error for the improvements made by the school-district in order to carry out the specific use and purpose for which the land was required? Could plaintiff in error properly insist that the loss of the school-house was an injury which he sustained by reason of the taking? The argument is that the moment the school-house was completed it belonged to the owner of the land by operation of law, and therefore than he was entitled to be recompensed for it upon condemnation. The maxim quicquid plantatur solo, solo cedit, is not of universal application. Structures for the purposes of trade or manufacture, and not intended to become irrevocably part of the realty, are not within the rule, (Van Ness v. Pacard, 2 Pet. 137,) nor is it applicable where they are erected under agreement or by consent, the presumption not arising that the builder intended to transfer his own inprovements to the owner. And courts of equity, in accord with the principles of the civil law, when their aid is sought by the real owner, compel him to make allowance for permanent improvements made bona fide by a party lawfully in possession under a defective title. Story, Eq. Jur. § 1237. The civil law recognized the principle of reimbursing to the bona fide possessor the expense of his improvements, if he was removed from his possession by the legal owner, by allowing him the increase in the value of the land created thereby. And the betterment laws of the several states proceed upon that equitable view. The right of recovery, where the occupant in good faith believes himself to be the owner, is declared to stand upon a principle of natural justice and equity; and such laws are held not to be unconstitutional, as impairing vested rights, since they adjust the equities of the parties as nearly as possible according to natural justice; and in its application, as a shield of protection, the term 'vested rights' is not used in any narrow sense, but as implying a vested interest of which the individual cannot be deprived arbitrarily without injustice. The general welfare and public policy must be regarded, and the equal and impartial protection of the interests of all. Cooley, Const. Lim. *356, *386. But if the entry upon land is a naked trespass, buildings permanently attached to the soil become the property of the owner of the latter. The trespasser can acquire no rights by his tortious acts.
 
 
 2
 The circuit court was not dealing with an action of ejectment or trespass, but simply with a proceeding in the exercise of the right of eminent domain. That right is the offspring of political necessity, and is inseparable from sovereignty, unless denied to it by its fundamentallaw. It cannot be exercised except upon condition that just compensation shall be made to the owner, and it is the duty of the state, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken,b ut to the public which is to pay for it. Garrison v. New York, 21 Wall. 196, 204, Kohl v. U. S., 91 U. S. 367, 371. The occupancy here was in no respect for a private purpose or pecuniary gain, but strictly and wholly for the public use. There could be no presumption that this public agent intended to confer public property upon a private individual nor were the circumstances such as to impart the character of willful trespass to the entry by the district, or impose liability to the forfeiture of improvements made in discharge of its public duty.
 
 
 3
 It is among the agreed facts in the case that the premises appropriated were necessary for the schools, and were taken for that public use; that though the district had knowledge of the issuing of a patent covering the property, yet it purchased the adverse title of the party then in possession, believing it to be better than the patent title, and upon the advice of reputable counsel, who had, on investigation, reported against the validity of the patent, and in favor of the validity of the title purchased, and paid $3,500, which was $500 more than the actual value, without the building, was admitted to be when the trial took place; and that, notwithstanding notice that it was proceeding at its peril, it erected the building in reliance upon such belief that it had the better title. The only legitimate inference from these facts is that the district acted throughout in good faith, as the opposite of fraud and bad faith, and, although it may have been wholly mistaken, the intention guided the entry and fixed its character, and it cannot be held to have been such a trespass as to justify the claim that the school building, erected in similar good faith, so became part and parcel of the land as to entitle the owner to recover its value. Plaintiff in error knew when he obtained the title that the land was in necessary use by the public for a purely public purpose, and that no intention of parting with the structures could be imputed; and no notice of what his grantor or himself intended to insist on could destroy the good faith in fact, which the conceded belief of the district imparted to its conduct.
 
 
 4
 In Wright v. Mattison, 18 How. 50, this court, in considering a statute of the state of Illinois in protection of persons 'in the actual possession of lands or tenements under claim and color of title made in good faith,' reiterated the rule that color of title is matter of law, but good faith in the party claiming under such color is purely a question of fact; and held that, while defects in the title might not be urged against it as destroying color, they might have an important and legitimate influence in showing a want of confidence and good faith in the mind of the vendee, if they were known to him, and he therefore believed the title to be fraudulent and void. The court approved of the opinion of the supreme court of Illinois in Woodward v. Blanchard, 16 Ill. 424, in which it was said by SCATES, C. J., that 'the state of mind of the party in relation to such title was an existing truth which must be ascertained and found as a fact in the cause. Many independent facts and surrounding circumstances may be admissible in evidence, and legitimately considered as establishing or impeaching the state of mind in its good faith, honest belief or trust in, or dependence upon, such title.' And this language was quoted by the court from that opinion; 'Good faith is doubtless used here in its popular sense, as the actual, existing state of the mind; whether so from ignorance, scepticism, sophistry, delusion, fanaticism, or imbecility and without regard to what it should be from given legal standards of law or reason.' Ewing v. Burnet, 11 Pet. 41; Pillow v. Roberts, 13 How. 472. As remarked by BECKWITH, J., in McCagg v. Heacock, 34 Ill. 476, 479: 'The good faith required by the statute, in the creation or acquisition of color of title, is a freedom from a design to defraud the person having the better title;' and 'the knowledge of an adves e claim to or lien upon property does not, of itself, indicate bad faith in a purchaser, and is not even evidence of it, unless accompanied by some improper means to defeat such claim or lien.'
 
 
 5
 We are of opinion that plaintiff in error could not successfully contend that the school-district should be treated as a naked trespasser. And as the actual value of the land at the time of the trial must have included whatever increase may have inured by reason of its adaptability to school purposes, and every other element entering into its cash or market value, as tested by its capacity for any and all uses, it follows that the true criterion of recovery was adopted. It is not denied that the school-district, when it filed its petition, was entitled to acquire the property in the exercise of the power of eminent domain; but it is said that it could not do so prior to February 13, 1883, the date of the passage of an act rendering such action on its part lawful. Sess. Laws Colo. 1883, p. 263; Gen. St. § 3044, p. 893. But we cannot perceive that this affects the precise question before us. Inability to condemn indicates that possession was not taken with the view of proceedings to that end, but that is conceded, on the other ground, that the school-district believed that it had the better title, and erected its building accordingly. When it came to possess and exercise the power, the inquiry was limited to such compensation as was just, and did not embrace remote or speculative damages, or payment for injuries not properly susceptible of being claimed to have been sustained. It was ruled in Secombe v. Railroad Co., 23 Wall. 108, 118, in relation to the taking of private property by a railroad company under the power of eminent domain, that 'prior occupation without authority of law would not preclude the company from taking subsequent measures authorized by law to condemn the land for their use. If the company occupied the land before condemnation without the consent of the owners, and without any law authorizing it, they are liable in trespass to the persons who owned the land at the time, but not to the present plaintiff.' Plaintiff in error obtained the legal title February 2, 1884, and this petition was filed the 2d day of June of that year. If he suffered injury by being kept out of possession, for which he could recover damages, they could not be assessed in this action, and there is nothing in the record to show that any claim to that effect was made. Chapter 31 of the General Laws of Colorado treats of eminent domain, and constitutes chapter 21 of Dawson's Code of Civil Procedure, referred to in the record. Section 253 provides that, 'in estimating the value of all property actually taken, the true and actual value thereof at the time of the appraisement shall be allowed and awarded,' and that 'in all cases the owner or owners shall receive the full and actual value of all property actually taken.' Dawson, Code 1884, p. 80. This means, of course, the value of the owner's real interest. It was agreed that at the time of the trial the actual value of the land, 'without the improvements thereon made by the school board,' was $3,000; so that, as before stated, the sole question is whether the circuit court erred in holding that the defendant could not be allowed for the improvements. We think that in this there was no error. In our judgment, the technical rule of law invoked to sustain the defendant's contention that he owned the school-house was inapplicable, and the value of the improvements could not justly be included in the compensation. Numerous well-considered decisions of the state courts announced the same result. Justice v. Railroad Co., 87 Pa. St. 28, 32; Jones v. Railroad Co., 70 Ala. 227; Lyon v. Railroad Co., 42 Wis. 538; Railroad Co. v. Goodwin, 111 Ill. 273; Navigation Co. v. Mosier, 14 Or. 519, 13 Pac. Rep. 300; Morgan's Appeal, 39 Mich. 675. The judgment is affirmed.
 
 
 
 [1]
 Affirming 38 Fed. Rep. 18.