UNITED STATES OF AMERICA *v.* ESTATE OF BER-
NICE PAUAHI BISHOP, DECEASED: and JOSEPH
O. CARTER, *et al.*, Trustees under the will of BERNICE
PAUAHI BISHOP, deceased; OAHU RAILWAY AND
LAND COMPANY: LIMITED, a corporation, THE
DOWSETT COMPANY, LIMITED, a corporation; THE
HONOLULU SUGAR COMPANY, a corporation; HO-
NOLULU PLANTATION COMPANY, a corporation;
CHOW AH FO, JOHN Ii ESTATE, LIMITED, a cor-
poration; WILLIAM G. IRWIN, OAHU SUGAR COM-
PANY, LIMITED, a corporation; BISHOP & COM-
PANY, a co-partnership.

DATED: MARCH 11, 1902.

1. The actual market value of the leasehold interest of the defendant in the lands sought to be condemned, at the date of the issuance of the summons, is the measure of compensation to be awarded in this case.

2. The actual market value of the said leasehold interest must be shown by the usual and common means adopted for such purposes.

3. Speculative values must not be considered.

4. The value of a leasehold interest is its actual market value over and above the amount of rent of the land leased and the taxes, if the lessee has to pay the taxes.

5. In placing a value upon the leasehold interest in the lands sought to be condemned, a mere speculative or possible value of sugar that might be produced in the future on said land covered by the said leasehold interest cannot be considered by the jury.

6. Arbitrary or lumping methods of assessing damages for the taking of property are to be condemned.

7. Knowledge obtained by the jury through personal inspection of the land upon which this leasehold interest exists, may be used only in determining the weight of conflicting testimony respecting the value of the said leasehold interest in the land, but not otherwise.

8. What weight to be given to expert testimony.

9. Sworn tax returns as to the value of the leasehold interest of the defendant in said lands made to the Assessor of the Territory by the manager of the defendant in accordance with law, are admissions against interest, and are competent evidence tending to show what the defendant then believed to be the value of said leasehold interest.

10. A statement of the assets and liabilities of the defendant filed by the secretary of the defendant with the Treasurer of the Territory, as required by Section 2076 of the Civil Laws of the Territory, is admissible in evidence as a statement against interest.

11. The value of the user to the defendant for the remaining portion of the term of its leasehold interest in the lands sought to be condemned, of any improvements placed on said lands, may be ascertained by the jury, but must be assessed separate and distinct from the value of the leasehold interest in said lands.

12. The value or cost of construction of the sugar mill, the pumping stations or any of the machinery belonging to the defendant, cannot be considered unless the same were constructed or standing upon the land sought to be condemned at the time of the commencement of the action.

13. Under the provisions of Section 11 of the Treaty of 1887 between the Government of Hawaii, then represented by King Kalakaua,

and the Republic of the United States, the United States Government acquired the exclusive right to the land-locked waters of Pearl Harbor, and such government now owns and of right controls all of the waters thereof.

EMINENT DOMAIN. ⎱ Action brought to condemn certain lands under the provisions of an Act of Congress dated August 1, 1888, entitled "An Act to authorize the condemnation of land for sites of public buildings and for other purposes."

*J. J. Dunne,* Assistant U. S. District Attorney, for the Government.

*Hatch & Silliman,* for Honolulu Plantation Company.

*Honolulu Plantation Case.* Second trial.

### CHARGE TO THE JURY.

ESTEE, J. Gentlemen of the jury, you have patiently listened to the evidence in this case for over a week; you have visited the lands in controversy; you have for two days listened to the exhaustive arguments of the learned counsel in the case. And now it only rests for the Court to charge you, and submit the case for your consideration and verdict.

This general action in which the Honolulu Plantation Company is one of the defendants, is brought under the provisions of an Act of Congress of the United States, dated August 1, 1888, entitled "An Act to authorize the condemnation of land for sites of public buildings and for other puropses." (Vol. 25, U. S. Statutes, P. 357.)

The lands sought to be condemned, together with all interests of every kind therein, are certain lands situate in the District of Ewa, in and about the Harbor of Pearl Lochs, sometimes called Pearl Harbor, in the Island of Oahu, in the Territory of Hawaii.

The United States of America seeks to condemn these lands and to acquire a fee simple estate therein for a public use, to-wit: for the purpose of erecting and maintaining thereon a naval station and channel defense, for the uses and purposes of the United States of America, and of the Navy Department thereof, and for the improvement of the harbor and channel leading thereinto, known as Pearl Lochs, sometimes called Pearl Harbor, together with the erection and maintenance upon said tracts and parcels of land, of all such public buildings, magazines, arsenals, navy-yards, light houses, quarantine stations, wharves, docks, piers, canals, roads, ditches, flumes, acqueducts, pipe lines, cemeteries and sewers as may be proper or necessary to or for the efficient maintenance of said naval station and harbor and channel defense for the uses and purposes of the United States government therein and of its said Navy Department.

The property especially sought to be condemned by the United States government in this present case now being tried before you, is the lease-hold interest owned by the defendant, the Honolulu Plantation Company. The lines as shown upon two certain maps introduced in evidence and marked "Plaintiff's Exhibit 8," and "Defendant's Exhibit A," are the exterior boundary lines of the tract which show the boundary of the leasehold. The said maps showing the leasehold of the property of the 561.2 acres of the Honolulu Plantation Company, with which maps you are familiar from the frequent reference thereto throughout the trial.

The leasehold interest of the defendant herein is derived from two sources, which was made apparent on the trial by the introduction of the leases themselves, but a brief statement of which will doubtless be of some service to you in understanding the exact nature of this interest. It appears that on the first day of September, 1888, Charles R. Bishop and others, as trustees under the will of Bernice Pauahi Bishop, deceased, the then owner of the fees in these lands, made a lease to one James I. Dowsett, covering the lands in question, and also certain other lands, including in all about 2900 acres; said leasehold interest was to continue for a period of twenty years from the said first

day of September, 1888, or until September 1, 1908. The rental reserved being $900 per annum.

Subsequently, J. I. Dowsett died, and the administrator of the estate, on the first day of August, 1898, sub-let the land involved in the present suit and the other lands described, in all about 2900 acres, to the Honolulu Sugar Company for the round sum of twenty thousand dollars. In other words, the Honolulu Sugar Comapny bought the leasehold interest of the Dowsett estate in all these lands, fully paid up, for $20,000. This leasehold interest then had some ten years to run and was a fully paid up lease, when within two months thereafter, to-wit: on the 28th day of September, 1898, the Honolulu Sugar Company assigned said lease to the defendant herein, the Honolulu Plantation Company, who took possession under the lease and is in possession now under the same. This lease is the so-called Dowsett lease. The second lease upon which the defendant bases its interest in these lands is a lease made by the trustees of the estate of Bernice Pauahi Bishop, deceased, dated October 1, A. D. 1898, covering the lands embraced in the lease from the Dowsett estate and hereinbefore referred to, and involved in this present suit, and certain other lands, including in all over 2200 acres, and covering especially the 561.2 acres of land sought to be condemned by this proceeding.

Subsequently the Honolulu Sugar Company, and at about the same date, assigned this lease to the defendant herein, the Honolulu Plantation Company, a corporation, duly incorporated in the state of California. Under the terms of this lease from the Bishop estate, so-called, the lessees were to be given possession of the demised premises for a period of thirty-two years from the first day of September, 1908, the date of the cessation of their possession under the Dowsett lease, and for thirty-four years from the first day of January, 1906, for the whole of said lands.

The rental agreed to be paid by the Honolulu Sugar Company and its assignee, the defendant, the Honolulu Plantation Company, as a consideration for said lease of said lands, is three and a half per cent. of the gross annual amount of sugar

produced on the premises, it being understood that the said percentage shall not be less than $1333.33 per year from January 1, 1906, to September 1, 1908; and not less than four thousand dollars net in any one year thereafter from and after the said September 1, 1908. It is clear, therefore, from an examination of these leases, that they cover a large tract of land, namely, one of them over 2900 acres of which the portion desired by the government is but a small part, a trifle over a fifth thereof, to-wit: 561.2 acres, as was agreed upon between the counsel at the trial. The total area sought to be condemned and included within the lines marked out on the maps hereinbefore referred to being 561.2 acres. The other lease covers over 2100 acres.

It is the value of these leasehold interests in these 561.2 acres of land that you are to estimate. No testimony has been introduced by either party showing or tending to show the value of the leasehold or any part of the land described in the leases, except as to the 561.2 acres sought to be condemned by the government, save and excepting certain written admissions appearing in the assessment returns, and the returns made to the State Treasurer's office, introduced by the plaintiff in evidence.

I charge you that private property cannot be taken for public use without "just compensation." This is the language of our fundamental law, the Federal Constitution (Article 5 of the Amendments of the Constitution of the United States.)

In this behalf I charge you, also, that the leasehold interest of the defendant, the Honolulu Plantation Company, is property, and that the said defendant is entitled to receive a "just compensation" for its taking. And in assessing this "just compensation," it is your duty to see that it is "just compensation," not merely to the individual whose property is taken, but to the public who is to pay for it. *Searl v. School District*, 133 U. S. 553, 562.

I further charge you that it is your duty to treat both sides with equal fairness and impartiality in arriving at a conclusion on the question of compensation. You are not to give any one side any preferment or advantage denied the other. For instance, you are not to place an unduly depreciative valuation

upon this leasehold interest because the United States government wants it, nor should you place an exaggerated valuation upon the property either because it is private property or because the government wants it.

And the Court reminds you that you are to be the sole judges of the weight and truthfulness of all of the evidence introduced herein.

If in the course of this trial this Court has by any word or expression appeared to favor one side or the other, it was not so intended. It is the duty of the Court and its aim, and it should be the duty of the jury, to do absolute justice between the parties in this, as in all other actions; and you are simply to take the law from the Court and confine yourselves solely to a consideration of the testimony produced in the case in arriving at a verdict, without limiting your consideration to any isolated portions of the testimony, but considering it as a whole, fairly weighing all the testimony, both the direct and indirect, with all reasonable inferences to be drawn therefrom.

I further instruct you that the burden of proof in this case is upon the plaintiff; in other words, the claim of plaintiff as to the amount of compensation so to be awarded to the defendant by your verdict must be proven by the plaintiff by a preponderance of the evidence.

I instruct you that whenever private property is taken for a public use, the fair market value of the property at the time of the taking should be paid for it; and according to the statute of this territory, the actual value of the property at the date of the issuance of the summons is designated as the measure of the valuation of all property to be condemned and I charge you that the date of the summons in this case was July 6th, 1901.

It is to this date therefore that you are to look in fixing the value of the leasehold interest involved in this case. You are to remember that the material consideration is the actual condition of the leasehold interest on that date. It is to this that you are limited.

In placing a valuation upon this leasehold interest, you cannot consider the mere speculative or possible value of sugar

that might be produced in the future on this land. This is too remote and uncertain and can form no just basis for a just valuation. The amount of sugar which it is claimed can be produced on this land is purely speculative, as the amount of such sugar crop would depend on many conditions, such as the character and amount of fertilizer used, the amount of water, the manner of cultivation, the depth and richness of the soil, and many other elements which necessarily must enter into the problem of a crop which might be produced in any one year or series of years. But you may consider what the land is best suited for and the defendant is entitled to a just compensation for its leasehold interest in these lands for any purpose for which it may reasonably be used; and if from the evidence you should find that the defendant has any improvements upon that portion of the land covered by the leasehold interest of the defendant and which is sought to be condemned by the United States, which were there prior to the 6th. day of July, 1901, you are to find the value of the user of such improvements to the defendant for the remaining portion of the term of the leases, separate and distinct from the value of the leasehold interest itself in said lands. And in this connection, I instruct you that under the terms of the Bishop lease so-called, all improvements on said land at the termination of said leasehold interest go to the lessors or its successors in interest.

I further instruct you that you are not to consider in this case, the cost of construction or the value of the sugar mill, the pumping stations or any of the machinery belonging to the defendant, if said sugar mill, pumping stations or machinery were not constructed or standing upon the 561.2 acres of land sought to be condemned by the government at the time of the commencement of this action, to-wit: July 6th, 1901.

Most of the evidence introduced by the defendant in this case as to the value of these leaseholds was expert testimony namely the opinions of witnesses given in answer to hypothetical questions propounded to them; and while great weight should always be given to the opinions honestly expressed and fairly given of those persons familiar with the subject, yet you are

not bound by such expert opinions, but they are to be intelligently examined by you in the light of your own personal knowledge and experience, giving force and control only to the extent that they are found to be reasonable, and in view of all the other testimony presented in the case. And while the jury cannot in any case, act under particular facts material to its disposition, which rest solely within their private knowledge, but should be governed by all the evidence adduced, yet they should judge of the weight and force of that evidence by their own general knowledge of the subject. In a word, the jury is not bound to give weight to testimony which is contrary to what every person of good sense and ordinary intelligence knows to be true.

Gentlemen of the jury, during the trial, you visited the lands sought to be condemned, the object of such visit was that you might familiarize yourselves with the nature and extent of the land and its physical characteristics and condition, so as to better enable you to understand the evidence on the trial of the case. The knowledge so acquired may be used by you in determining the weight of conflicting testimony respecting the value of the leasehold interest in these lands but not otherwise; the court instructs you that there is no testimony in the case as to the value of the artesian well on said premises. You will therefore not give the matter of this well any consideration.

You are further instructed that unquestioned written admissions are among the strongest testimony which can be introduced tending to show any given state of facts and the Court reminds you that some evidence has been introduced by the government tending to show certain valuations of this leasehold interest sworn to by the defendant through its manager, Mr. Low, before the commencement of these proceedings, to-wit: certain tax returns filed with the Assessor pursuant to the laws of the Territory of Hawaii. Such sworn returns made by the representative of the defendant to the assessor are admissions against interest and are competent evidence tending to show what the defendant then believed the value of the property to be. You may, therefore, consider such returns along with the other

evidence in the case upon the question of value of this property and give it such weight as you may deem just.

So also as to certain other written evidence introduced by the government tending to show the value of the real property of the defendant, and which includes the leasehold interest of the defendant in this land sought to be condemned. It is provided by Section 2076 of the Civil Laws of the Territory of Hawaii that—

"Every corporation or incorporated company formed or organized under the laws of any foreign state which may be desirous of carrying on business in this Republic, and to take hold and convey real estate therein, shall file in the office of the Minister of the Interior   *   *   *

4. An annual statement of the assets and liabilities of the corporation or company, in this Republic, on the first day of July of each year."

The defendant being a foreign corporation, through its Secretary, Mr. Sheldon, about six months prior to the commencement of this suit, filed with the Treasurer of the Territory, on or about the first day of January, 1901, that statement as required by the territorial law. This statement is also admitted in evidence as a statement against interest, and you are to give it such weight and significance as to you may seem proper.

The Court further instructs you that you are to reach a final conclusion in this case by a preponderance of the evidence, which is not meant, gentlemen, the evidence given by the greater number of witnesses, but the superior strength of certain evidence and the greater weight which that evidence may in your judgment be entitled to. In weighing the testimony you should take into consideration the opportunities of the witnesses for seeing or knowing the things about which they testify, and especially so when testifying as experts as to the value and also the interest or lack of interest in the result of the action, the probability or the improbability of the truth of their several statements and the reasonableness of their opinions when testifying as experts, and from all the circumstances, you are

to determine upon which side the weight or preponderance of the evidence rests.

Arbitrary or lumping methods of assessing damage for the taking of property are not proper and are to be condemned.

You are to bear in mind that the object of this trial is to find out what was the fair market value of the leasehold interest of the Honolulu Plantation Company in the 561.2 acres of land sought to be condemned by the United States on July 6th, 1901. This may be shown by the usual and common means adopted for such purpose and no mere speculative valuations are to be considered by you. You have the right, and it is your duty, to consider all the elements of value affecting this land and the leasehold which is sought to be condemned therein by plaintiff; and it is also your duty to consider that this land is not now appropriated to any valuable use; that it is not now producing a crop. You will in assessing the damage, have the right to take into consideration all the elements of a lack of value as you do all the elements of value. The Court further instructs you, that the value of a leasehold is its actual market value over and above the amount of rent of the land leased and the taxes if the lessee has to pay the taxes.

Some testimony was introduced to the effect that there were favorable places along the shore line of this property for the construction of wharves. I instruct you that the United States government owns and of right controls all the waters of Pearl Harbor and the defendant has no legal right to build a wharf from the shore of the land referred to into the waters of said Harbor without the authorization of the government of the United States.

In the year 1875, and in 1887, treaties were negotiated between the government of Hawaii, then represented by King Kalakaua, and the Republic of the United States, by which the latter government granted reciprocity to Hawaiian sugar and other articles produced in Hawaii.

In the treaty stipulations of 1887, of which treaty stipulations this Court takes judicial cognizance, it was prescribed by Article 11 thereof as follows:

"His Majesty, the King of the Hawaiian Islands, grants to the government of the United States, the exclusive right to enter the harbor of Pearl River in the Island of Oahu, and establish and maintain there a coaling and repair station for the use of vessels of the United States, and to that end the United States may improve the entrance of said Harbor and do all other things needful for the purpose aforesaid."

It will be seen that by the terms of said treaty of 1887, that the United States then secured the exclusive right to the land-locked waters of Pearl Harbor, and so while private parties may own the land bordering on these waters, the waters themselves have belonged to the United States since the date of that treaty.

I therefore instruct you, that in reaching a verdict you are not to consider or place any value upon said inland waters as belonging to the private parties now litigating with the United States government, because although the treaty made between the Kingdom of Hawaii and the United States of America in 1887, by which Pearl Harbor was ceded to the United States, did not in any way affect private ownership in the lands fronting on said Harbor, those parties have no interest other than that of every citizen of the United States in the sloughs and waters of Pearl Harbor, for these inland waters are now and since 1887, have been the property of the United States.

In conclusion let me say to you, that the evidence in this case is very conflicting, and without commenting upon the testimony of any one witness, I instruct you that in considering the testimony of all of the witnesses in this case, you may accept such portions thereof as you may believe to be true, or reject such portions thereof as you may be believe to be false,—If the statements of any one or more witnesses are so unreasonable or improbable as that upon their face they do not carry conviction of their truth to your minds, you are at liberty to reject all or any part thereof.

Gentlemen of the jury, under the pleadings in this case, there is but one issue involved—the amount of the just compensation to be awarded to the defendant for the taking of its property.

You must therefore find for the plaintiff a verdict condemning

the leasehold interest of the defendant, the Honolulu Plantation Company. in and to the 561.2 acres of land desired by the government; and you must find a verdict in favor of the defendant for the amount of the compensation which from all the testimony you shall deem just.

NOTE: To the same effect, see charge in *United States ot America v. Honolulu Plantation Co.*, (First trial) dated Jan. 11, 1902, not reported.