**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**901.89 ACRES OF LAND IN DAVID-
SON AND RUTHERFORD COUNTIES,
TENNESSEE, and H. E. Johnson, et al.,
Defendants-Appellees.**

**No. 20169.**

United States Court of Appeals,
Sixth Circuit.

Dec. 22, 1970.

Jacques B. Gelin, Dept. of Justice, Washington, D. C., for appellant; Shiro Kashiwa, Asst. Atty. Gen., S. Billingsley Hill, Raymond N. Zagone, Charles N. Woodruff, Attys., Dept. of Justice, Washington, D. C., Charles H. Anderson, U. S. Atty., Wm. Buford Bates, Asst. U. S. Atty., Nashville, Tenn., on brief.

Norman D. Lane, Nashville, Tenn., for appellees; Harry S. Lester, Nashville, Tenn., on brief.

Before PHILLIPS, Chief Judge, BROOKS, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

This appeal involves 144.80 acres of the acreage set out in the title. They were owned by appellees Lawrence Dav-

enport and his wife and were taken through condemnation by the United States. The land was taken preparatory to construction, in Tennessee, of the J. Percy Priest Dam and the impounding of J. Percy Priest Lake behind the Dam. The United States appeals from judgment entered in the United States District Court for the Middle District of Tennessee which confirmed the report of a Commission, appointed under Rule 71A(h), Fed.R.Civ.P. The Commission awarded appellees $72,400 as compensation for the taking of their land.

We reverse and remand.

At the time of the taking, April 5, 1966, appellee Davenport owned 218.80 acres, 49 of which he had purchased in 1965 after plans for the project had been announced and negotiations by him with the government had commenced. Prior to this purchase, Davenport owned a parcel of approximately 170 acres, one boundary of which would abut the government's project. It was proposed that the government would take substantially 144.80 acres of this parcel, leaving Davenport with 24.85 acres. This remnant would be landlocked, without access to any highway. The 49 acre tract purchased by Davenport adjoined the 24 acre remainder and also abutted a highway on one side. After the government took 144.80 acres, Davenport was left with a 74 acre tract which was contiguous to the government project and also had access to the highway. No private lands were to front on the lake, but Davenport's remainder, like some others, would overlook the lake with an unobstructed view.

The award of $72,400 was arrived at by ascribing a value of $97,000 to the total 218.80 acres owned by Davenport (including the recently acquired 49 acre parcel) on the day of the taking, or approximately $443 per acre, and putting a value of $24,600, or approximately $330 per acre, on the 74 acres retained by Davenport. This latter amount was deducted from the value of the whole, resulting in the award of $72,400.

The government correctly states as a question for review the following:

"1. Whether, in determining just compensation for a partial taking of land, project-created enhancement in the market value of the remainder, which is contiguous to the project, may be disregarded."

### 1. Enhanced value of the condemnees' retained and contiguous lands.

An appraiser, testifying for the government, valued Davenport's 218.80 acre tract at $80,000, or about $365 per acre, as of the day of the taking. That was its market value without any enhancement because of its proximity to the already projected development of the J. Percy Priest Dam and Lake. The witness was qualified and buttressed his valuation by referring to comparable sales. He then valued the 74 acres, title to which would remain in Davenport, at $30,000 or about $404 an acre. In valuing this remainder, he gave consideration to the enhancement that would accrue to it from its proximity to the lake and the advantage of an unobstructed view thereof. Deducting this $30,000 from the $80,000 value placed on the entire tract, he came up with a figure of $50,000 representing the fair compensation that should be paid to Davenport. This appraiser's method was correct.

It is familiar law that in fixing compensation for land that the government takes by condemnation, no amount may be added for the enhancement of value that is the product of the projected public improvement. In United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063 (1913), the rule was stated:

"Neither can consideration be given to probable advancement in the value of such riparian property by reason of the works to be constructed in the river by the government, or the use to which the flow of the stream might be directed by the government. The value should be fixed as of the date of

the proceedings, and with reference to the loss the owner sustains, considering the property in its condition and situation at the time it is taken, and *not as enhanced by the purpose for which it was taken.* Kerr v. South Park Comrs., 117 U.S. 379, 387, 6 S. Ct. 801, 29 L.Ed. 924, 927; Shoemaker v. United States, 147 U.S. 282, 304, 305, 13 S.Ct. 361, 37 L.Ed. 170, 186, 187." 229 U.S. at 76, 33 S.Ct. at 677, 57 L.Ed. at 1080–1081. (Emphasis supplied.)

This continues to be the rule. United States v. Miller, 317 U.S. 369, 373–375, 63 S.Ct. 276, 87 L.Ed. 336, 342–344 (1943); United States v. Reynolds, 397 U.S. 14, 16–18, 90 S.Ct. 805, 25 L.Ed.2d 12 (1970). The Commission's report does not say whether it did or did not follow such rule. It found the market value of Davenport's entire acreage to be $97,000. This value does not conform to any appraisal provided by any wit-ness.

■ Appellees had the burden of proving the fair market value of the condemned land. United States ex rel. and for Use of T.V.A. v. Powelson, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390, 1396–1397 (1943); United States v. 1291.83 Acres of Land, 411 F.2d 1081, 1084 (6th Cir. 1969). Both witnesses for the appellees, Davenport himself, and his expert, erroneously based their valuations on the original 170 acre tract and 24 acre remainder. Davenport said his 170 acres, including the 24 acres not taken, was worth $155,000. He did not attempt to claim that such was its market value, and the Commission gave it no consideration. Appellee's expert, John J. Beck, came up with a figure of $108,000 for the same 170 acres. We have no way of knowing how the Commission arrived at its value of $97,000. Its report does not advise whether it did or did not add anything to the value of the land taken because of its proximity to the government project. If it did, it committed error. The Commission's failure to reveal the basis of its valuation of the entire tract before taking,

leaves us without any means of testing the validity of its conclusion. United States v. Merz, 376 U.S. 192, 198, 84 S. Ct. 639, 11 L.Ed.2d 629 (1964).

In putting a value of $24,600 on the retained 74 acres, the Commission refused to add any amount for enhancement of the value of the said acres resulting from their proximity to the public improvement. The government appraiser did consider such enhancement. This was proper. In 1918 Congress enacted a statute, now codified in Chapter 12 of the Code as Title 33 U.S.C. § 595. It reads:

*"Consideration of benefits in assessing compensation."*

"In all cases where private property shall be taken by the United States for the public use in connection with any improvement of rivers, harbors, canals, or waterways of the United States, and in all condemnation proceedings by the United States to acquire lands or easements for such improvements, where a part only of any such parcel, lot, or tract of land shall be taken, the jury or other tribunal awarding the just compensation or assessing the damages to the owner, whether for the value of the part taken or for any injury to the part not taken, shall take into consideration *by way of reducing the amount of compensation or damages any special and direct benefits to the remainder arising from the improvement, and shall render their award or verdict accordingly."* (Emphasis supplied.)

This statute was primarily a codification of what had long been the law of federal condemnation. The philosophy of the rule was early announced in Searl v. School District No. 2, 133 U.S. 553, 562, 10 S.Ct. 374, 33 L.Ed. 740, 746 (1890), where the Supreme Court said of the power of eminent domain:

"It cannot be exercised except upon condition that just compensation shall be made to the owner, and it is the duty of the State, in the conduct of the inquest by which the compensation

is ascertained, to see that it is just, not merely to the individual whose property is taken, *but to the public which is to pay for it.* Garrison v. New York, 21 Wall. 196, 204, 88 U.S. 196, 204 [22 L.Ed. 612, 614]; Kohl v. United States, 91 U.S. 367, 371 [23 L. Ed. 449, 450]." 133 U.S. at 562, 10 S.Ct. at 377, 33 L.Ed. at 746.

█ The rule of law now embodied in an Act of Congress is designed to put the owner in as good position *pecuniarily* as he would have been had his property not been taken. If the taking has, in fact, benefited a remainder not taken, such accruing benefit is to be set off against the value of the land actually taken in determining just compensation. United States v. Miller, 317 U.S. 369, 373, 376, 63 S.Ct. 276, 87 L.Ed. 336, 342, 344 (1943).

The Commission, however, here refused to countenance any deduction for the benefits accruing to the remainder,

"because * * * the benefits of the Percy Priest Dam and Reservoir Project were *general only* with regard to the remaining property of the landowner [appellee] and that they were not special benefits."

We assume that they considered the enhancement of the value of Davenport's retained 74 acres could not be looked upon as the "special and direct benefits to the remainder" that 33 U.S.C. § 595 requires to be taken into consideration.

█ We consider that the Commission erred factually and legally in coming to such conclusion. The only testimony on the point came from the government's appraiser who testified in effect that the 74 acres remaining in Davenport were directly and specially benefited because of their proximity to the lake and their view thereof. He supported his evaluation of such benefits by citing some sales of parcels benefited in the same manner as Davenport's acreage. There was no evidence of a *general* enhancement of all properties

near to, or remote from, the dam and lake site.

This difference between so-called *general* benefits and *special and direct* benefits was set out in United States v. 2,477.79 Acres of Land, 259 F.2d 23 (5th Cir. 1958), where the Court quoted approvingly the following:

" 'The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, *and special benefits are those which arise from the peculiar relation of the land in question to the public improvement.* Ordinarily the foregoing test is a satisfactory one, though sometimes difficult to apply. In other words, the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, *from proximity to a desirable object,* or in various other ways. 3 Nichols on Eminent Domain, 3d Ed., 45, § 8.6203.' " 259 F.2d at 28. (Emphasis supplied.)

Some increase in value of the entire area would not detract from that coming to Davenport being appropriately recognized as direct and special. In United States v. River Rouge Imp. Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339 (1926), the Supreme Court considered the subject we deal with and said:

"We are of opinion that an increase in the value of the remaining portion of any parcel of land caused by its frontage on the widened river, carrying a right of immediate access to and use of the improved stream, *would constitute a special and direct benefit within the meaning of the statute,* as distinguished from a benefit common to all the lands in the vicinity, although the remaining portions of other riparian parcels would be similarly bene-

fited. \* \* \* In Alen v. Charlestown [109 Mass. 243, 246], the rule is thus stated: *'The benefit is not the less direct and special to the land of the petitioner, because other estates upon the same street are benefited in a similar manner.* The kind of benefit, which is not allowed to be estimated for the purpose of such deduction, is that which comes from sharing in the common advantage and convenience of increased public facilities, and the general advance in value of real estate in the vicinity by reason thereof \* \* \*.' The advantages of more convenient access to the particular lot of land in question, and of having a front upon a more desirable avenue, are direct benefits to that lot, giving it increased value in itself. It may be the same, in greater or less degree, with each and every lot of land upon the same street. But such advantages are direct and special to each lot. They are in no proper sense common because there are several estates, or many even, that are similarly benefited." 269 U.S. at 415–416, 46 S.Ct. at 146, 70 L.Ed. at 344. (Emphasis supplied.)

In United States v. Crance, 341 F.2d 161 (1965) the 8th Circuit said:

"It is settled that special benefits do not become general merely because other lands in the area are similarly benefited." 341 F.2d at 167.

See also United States v. Rands, 389 U.S. 121, 126, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967); McCoy v. Union Elevated R. R., 247 U.S. 354, 364, 366, 38 S.Ct. 504, 62 L.Ed. 1156, 1165–1166 (1918); and the cases gathered in the annotation in 145 A.L.R. 7 entitled Eminent Domain—Deduction of Benefits.

The evidence showed that when Davenport purchased the 49 acre parcel to insure access to the highway for the 24.-85 acres which would remain in him, he paid the sum of $408 per acre. The Commission's valuation of $97,000 for the entire 218.80 acres that Davenport owned at the time of taking amounts to $443 per acre. The value put on the 74 acre remainder—$24,600—amounts to $330 per acre after the taking. The first valuation should have been made without any enhancement because of the Priest Project, the second should have included something for the enhancement to the retained acres. Yet the Commission's valuation appears to do the reverse of what the law commands. Its report gives no explanation of why its valuation of the 74 acres is less than the per acre price paid by Davenport for the 49 acres he bought in anticipation of the condemnation. We find that the Commission erred in not applying proper legal standards and that its conclusion as to just compensation is clearly erroneous. United States v. Trout, 386 F.2d 216, 223 (5th Cir. 1967).

### 2. A final judgment should now be entered.

We come then to decide our disposition of this case; should we remand to the District Court and the Commission for further proceedings with the adversaries allowed, or required, to make a new record; should we require that the Court or Commission make findings of fact on the record already made and elucidate the basis for such findings; or should we conclude this litigation without putting the litigants to further delay and expense? We believe that under 28 U.S.C. § 2106, we are privileged to do the latter in view of the record before us.

We have said that "the burden of proving the fair market value of the property rests with the landowner." United States v. 1,291.83 Acres of Land, 411 F.2d 1081, 1084 (6th Cir. 1969). We there obeyed the rules recited by the United States Supreme Court in United States ex rel. and for Use of T. V. A. v. Powelson, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390, 1396–1397 (1943). One of appellee's value witnesses was himself, and without disclosing any qualifications and erroneously including only the original 170 acre parcel, he said his property had a market value of $155,000. He deducted from this figure

the amount of $5,000 which was his evaluation of some 24.85 acres which were not to be taken by the government. It is clear that the commission attributed no probative value to Davenport's testimony. Not only did it acknowledge the erroneous basis for the valuation, but the Commission concluded:

"Mr. Davenport's testimony was undercut to a considerable extent, other than the natural overexuberance of a landowner, by the fact that he admitted on cross-examination his fair market value figure was pretty much a 'take it or leave it proposition'. In other words, the figure testified to was the amount which he personally would insist on before he would sell the property. This, of course, is not necessarily the fair market value of the property."

Davenport's idea of the value of the land to its owner, himself, had nothing to do with market value. See United States v. Trout, 386 F.2d 216, 223 n. 10 (5th Cir. 1967).

Mr. John J. Beck was the expert appraiser called by appellee Davenport. Again a fair reading of the Commission's report discloses that no weight was given to his testimony. The Commission's report contains the following:

"The Commission finds Mr. Beck to be a fairly well informed witness, but deems his estimate as to value to be overly enthusiastic in this case. And, too, he did not include the 49 acres purchased by the landowners immediately prior to the date of taking either in assessing the before value of the property and in appraising the after value. Mr. Beck described the home on the subject property as being a 'nice country home', and also stated that the general neighborhood was in a stage of rapid transition in which small tracts were being developed. He stated that comparable sales were very hard to find, and did not testify to any. This of course did not help his appraisal of the property with regards to its weight.

"Mr. Beck thought the fair market value of the property was $108,000 before the taking, without the 49 acres, of course, and that its after value was $4,600. He specifically stated that the $4,600 figure referred to the 24.85 acres, and that he gave it a very low value because it was landlocked interior property. When asked he stated that he would upgrade his 'after' value $100 per acre if he had known it was not landlocked. This, of course, does not solve the dilemma of the Commission described above, since Mr. Beck gave no appraisal as to the fair market value of the 49 acres which was indeed left along with the 24.85 acres."

Apparently this witness was not aware that Davenport had acquired an additional 49 acres. He therefore assumed that what would remain in Davenport's ownership was approximately 24 acres. He placed a value of $4,600 on this parcel, also assuming that it was landlocked. Taking this figure from $108,000 he came up with $104,400 (this should be $103,400) as the "total loss Mr. Davenport incurred." When he was informed that Davenport's purchase of 49 acres would remove from the 24 acres its blight of being landlocked, he speculated that it would be worth $100 more per acre than his original estimate of $4,600. We share the Commission's view that this witness' testimony was obviously worthless.

As for the government expert, Robert H. Stroube, the Commission's report says:

"Mr. Stroube has testified before the Commission many times, and the Commission is aware that since 1964 he has done nothing but appraise properties in the area of the Percy Priest Dam and Reservoir Project. The Commission deems him to be a knowledgeable and helpful witness. Because he was apparently instructed to appraise the 'after' value of the subject property considering the reservoir enhancement, his testimony is considerably undercut in the case at bar.

The landowners insisted that the Commission should ignore his testimony altogether, but although the Commission gives it much less weight than it would otherwise do, it is felt that there is not sufficient warrant to ignore completely the testimony of Mr. Stroube. Indeed, by ignoring Mr. Stroube's comparable sales which were used to show the after value, and which did involve reservoir enhancement, Mr. Stroube's appraisal does become meaningful and helpful.

"Mr. Stroube thought that the total amount of property owned by the landowners, 218.8 acres, had a fair market value on the date of taking of $80,000 and that the value of the 74 acres remaining, which did enjoy reservoir enhancement value, was $30,-000. Thus he thought that the fair market value of the property before the taking, with no reservoir enhancement value, was $366 per acre, and that its value after was $400 per acre."

Thus the Commission found that the only fault with Stroube's appraisal was his inclusion in the after taking value of the 74 acres retained by Davenport, of the increment of enhanced value that accrued to them because of their proximity to and unobstructed view of the projected dam and lake. We have said, and hold, that Stroube was correct in this regard. Thus the only testimony which has probative value and discloses the proper compensation to which appellee is, and was, entitled stands unimpaired on the record. We do not consider that the Commission, after viewing the involved property, could substitute its own idea of value for probative evidence. United States v. Merz, 376 U.S. 192, 198, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); Government of Virgin Islands v. 2.6912 Acres of Land, 396 F.2d 3, 5 (3rd Cir. 1968). We believe that the record made provides adequate material upon which to base a final and just determination. The condemnees have had their day in court and we visit no injustice upon them by exercising the authority which

is ours under 28 U.S.C. § 2106. Moses Lake Homes, Inc. v. Grant County, 276 F.2d 836, 853 (9th Cir. 1960); Mefford v. Gardner, 383 F.2d 748, 758 (6th Cir. 1967); 14 Cyc.Fed.Proc. § 68.98, p. 523.

 We, therefore, reverse the judgment heretofore entered and remand the cause to the District Court for entry of a judgment fixing the just compensation to which the landowners, appellees herein, are entitled at the sum of $50,000. Costs on appeal are awarded to the government. Disposition of taxable costs in the District Court will be made by the District Judge.