**Decided October 19, 1981**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

P. D. HEMLANI,                    )    DCA NO. 80-9004
                                  )
        Plaintiff-Appellee,       )    CTC NO. 79-59
                                  )
    vs.                           )    O P I N I O N
                                  )
RAFAEL G. VILLAGOMEZ,             )
                                  )
        Defendant-Appellant.      )
_____ )

OPINION

Before LAURETA, Chief Judge, and DUENAS and MOORE, Judges.

PER CURIAM:

Defendant appeals from the trial court's judgment
granting plaintiff $18,000 (plus interest) for the refund
of payment on defendant's property and for improvements
made on the defendant's property. For the reasons set down
below, we affirm.

I.  FACTS

In 1970, plaintiff, a non-Trust Territory citizen,
entered into an "Agreement to Purchase Real Property"
(Agreement) with defendant, a Trust Territory citizen for
the purchase of defendant's property for $5,000. Paragraph
three of the Agreement provides that should the existing law
change allowing ownership of lands in the Northern Mariana
Islands to non-Trust Territory citizens, defendant will trans-
fer title of the property to plaintiff. See 57 Trust Territory
Code § 11101.[1]

- - - - - - - - - -

[1] 57 T.T.C. § 11101, as it applies to Marianas, is super-
ceded by Article XII of the Commonwealth Constitution
which restricts acquisition of land to persons of Northern
Marianas descent, and plaintiff does not qualify thereunder.

204

Plaintiff paid the full amount of $5,000 for the property but could not obtain the deed because of his citizenship. He subsequently built a building for the purpose of opening a store and signed an Agreement of Sale with the defendant for the same property in May 1973. In 1975, plaintiff and defendant decided to form a corporation to operate a business on the property but after receiving the charter, nothing further was done and no stock was ever issued. Neither did the corporation obtain a license as required by law. The defendant took over the premises sometime in 1975 and by 1976 the parties had difficulties with one another and their relationship became strained. As a result; the defendant has had possession of the property since 1975 or 1976, has rented the building to a third party, and kept the $5,000 paid by the plaintiff for the property.

## II. THE REFUND OF $5,000

The trial court found that the $5,000 paid by the plaintiff to the defendant for the purchase of the land was governed by paragraph four of their Agreement. Said paragraph provides:

> If for any reason the Seller is unable during the term provided in paragraph 6 Level,[2] [sic] to convey the said land to the Buyer then the Seller hereby agrees to refund to the Buyer all money paid by the Buyer in accordance with the terms of this instrument without interest.

Defendant's inability to convey his land to the plaintiff is due, of course, to the restriction on alienation of land mentioned earlier. See footnote 1 above.

- - - - - - - - - -

[2]Paragraph 6 provides:

> This agreement shall run for a period of ( ) year [sic] may not be rescinded except by mutual agreement of all parties hereto.

The expiration period was left blank since the parties did not know when, if ever, the restriction on alienation of land will be lifted.

205

The trial court stated that the indefiniteness of the transferring of title to the land is a "circumvention of existing law and in effect approving a long term interest whereby the plaintiff would have full possession, control and all use rights."

The trial court concluded that the indefiniteness of the transferring of title to the land as provided for in paragraph three of the Agreement cannot be sanctioned by the court.[3]

We do not agree with the Defendant's assertion that the trial court found the entire Agreement to be "illegal and unenforceable" or "void." Nowhere in the record do we find this assertion to be correct. To the contrary, the trial court upheld the validity of the Agreement by giving force and effect to paragraph four. In effect, the trial judge concluded that the provisions of the Agreement were divisible and the unenforceability of one provision did not void the whole agreement. We hold that the trial court correctly applied the doctrine of divisibility to the facts of this case.

III. THE IMPROVEMENT ON THE PROPERTY

Defendant argues that the trial court erred in awarding plaintiff compensation for his expenses in building the concrete

- - - - - - - - - -

[3]The trial judge stated:

> The Court cannot accept Defendant's theory that we should wait another twenty years to see if the law is changed so Defendant can transfer title. Nor can the Court accept plaintiff's . . . argument that the Plaintiff be placed back into possession indefinitely to see if the law is changed. Both of these 'remedies' are open end and constitute nothing more than judicial procrastination. In addition the Court would be participating in a circumvention of existing law and in effect approving a long term interest [for the plaintiff] . . .

> Judgment at 3.

structure on defendant's land. Defendant cites paragraph five[4] of the Agreement in support of his contention. But as the trial judge correctly pointed out, said paragraph does not apply to the existing situation but rather insures defendant harmless from a material or mechanics lien. Defendant failed to mention that he and the plaintiff acknowledged that the building is owned by the plaintiff, as evidenced by paragraph two[5] of the Agreement of Sale signed by the parties almost three years after the 1970 Agreement. Defendant's citation to 41 Am Jur 2d Improvements is not in point since it does not concern situations, as here, with a specific contractual statement setting forth the ownership of the improvement. An exception to the general rule that improvements belong to the owner of the land is found in the well-established principle that a structure erected by one man on the land of another, with his permission, does not necessarily become part of the real estate, but continues to be a personal chattel and the property of the person who erected it. Searl v. School District No. 2, 133 U.S. 553, 33 L.Ed. 740, 10 S.Ct. 374 (1890). Having found that the building was erected at the expense of the plaintiff, the trial court concluded that it would be unconscionable for the defendant to be unjustly enriched at the expense of the plaintiff merely because the latter has been ousted.

- - - - - - - - - -

[4]Paragraph five contained the following provision:

> 5. Upon the execution of this Agreement, the Buyer shall have full authority to enter the above-described land; to clear the same; the [sic] survey; to improve; to fence, to erect any structure thereupon as he (Buyer) shall determine desirable; and to use the said land for any prepare [sic] permitted by the law. Provided, however, that all expenses incurred by the Buyer in connection with the use of the above-described area option hereunder shall be for the account of the Buyer and the Buyer shall hold the Seller harmless for any and all charges that may be incurred.

[5]The paragraph reads:

> 2. That the existing building of the subject premises is presently owned by the Buyer.

207

It is a general rule of law that a court, in the exercise of its equity power, may fashion a fair and appropriate remedy when faced with a problem involving equity.

The trial judge's resolution of this problem by returning to plaintiff what he has invested but excluding profits; and permitting the defendant to take advantage of the profit earned by the plaintiff's investment (i.e., the appreciation in present market value of the building) plus the return of his land was a reasonable one. We will not interfere with the trial judge's discretion, unless clearly abused, to fashion a remedy where equity is involved.

## IV. PREJUDGMENT INTEREST

Defendant also argues that prejudgment interest was erroneously granted. Prejudgment interest is discretionary and is not prohibited by 8 T.T.C. § 1.[6] "Awards of prejudgment interest are governed by considerations of fairness and are awarded when it is necessary to make wronged party whole." United States v. California State Bd. of Equalization, _____ F.2d _____ (slip opinion dated July 13, 1981) (9th Cir.). See also Louisiana & Arkansas Railway Co. v. Export Drum Co., 359 F.2d 311, 317 (5th Cir. 1966) (holding that the interest provision of 28 U.S.C. § 1961 relates only to interest recoverable on a judgment itself and has nothing to do with the question of whether prejudgment interest shall be allowed as part of the compensation awarded to make the injured party whole).

We agree with the trial judge that the interest should commence to run on April 25, 1978, the day the initial lawsuit was filed, albeit in the wrong court. It was at least

- - - - - - - - - -

[6]8 T.T.C. § 1 provides:

Every judgment for the payment of money shall bear interest at the rate of Nine Per Cent (9%) a year from the date it is entered.

by that date that the defendant was notified of the plaintiff's desire to have their business relationship terminated and to have his money refunded. Under the circumstances, it was not an abuse of discretion for the trial judge to impose prejudgment interest.

For the reasons discussed above, we hereby AFFIRM the trial court's judgment.

DATED: _October 19, 1981_

_ALFRED LAURETA, Chief Judge_

_CRISTOBAL C. DUENAS, Judge_

_ROBERT E. MOORE, Judge_