**BIBB COUNTY, GEORGIA, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16669.**

United States Court of Appeals
Fifth Circuit.

Nov. 1, 1957.

Ellsworth Hall, Jr., Macon, Ga., Bloch, Hall, Groover, & Hawkins, Macon, Ga., of counsel, for appellant.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Elizabeth Dudley, Washington, D. C., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal from a summary judgment fixing just compensation in a condemnation proceeding. The background for the proceeding may be summarized as follows. In 1941, under authority of the "Lanham Act, 42 U.S.C.A. § 1521 et seq.," the United States constructed improvements consisting of housing units, store buildings and a garage on the land in question, which adjoined another tract of land owned by the Government. Just prior to completion of the improvements, it was discovered that by mistake they had been constructed in part upon the land of the County of Bibb, and a lease for the land was negotiated. The term of the lease [1] was one year.

At the expiration of the lease, an amendment was entered into providing for the automatic renewal of the lease for additional periods of one year each at the same rental provided for the original term, but that it was not to be renewed without the consent of the parties for a total period, including the original term, of more than ten years. It further provided: that no holding

---

1. Sec. 7 of the lease provides as follows: "Improvements to Premises. The Government shall have the right, during the existence of this lease, to make alterations, attach fixtures, and erect additions, structures of signs, in or upon the premises, or to construct improvements on the premises, as may be appropriate for the construction and operation of public works or equipment for public works, pursuant to the Act of Oct. 14, 1940 (Public No. 849, 76th Congress), as amended, *which fixtures, additions, structures, signs or improvements so placed in or upon the premises, shall be and remain the property of the Government and may be removed therefrom by the Government prior to the termination of this lease.*" (Emphasis added.)

over by the Government should operate to renew the lease, "except as specified herein"; that the premises were then being used to provide housing accommodations for veterans and their families; and that the parties "mutually desire to extend the date of expiration of said lease for the continued use of the premises as aforesaid." The original lease and amendment were executed by officials of the City of Macon of Bibb County and of the United States.

The suit was begun on December 31, 1954, to condemn the fee simple title to a tract of land comprising about 9.97 acres in Bibb County, Georgia, owned by the county, for the purpose of continuing in use, in the orderly demobilization of the war effort, the housing constructed thereon, of maintaining the said improvements and of protecting the investment of the United States therein. On the same day a declaration of taking was filed, and $5000 was deposited as estimated compensation for the land taken. On January 28, 1955, appellant filed an answer denying the jurisdiction of the district court and the authority of the government to condemn the property and alleging that it was the owner of the improvements and structures on the land for which compensation in the amount of $150,000 should be paid.

The government filed a motion for summary judgment awarding the condemnee $5000 on the ground that the pleadings, admissions and affidavits on file showed that it was entitled to judgment for that amount as a matter of law, and the district judge, on the basis of the decisions cited in his brief opinion,[2] agreeing with the plaintiff that there was no genuine issue as to any material fact and that a judgment for $5000, the agreed value of the land without the improvements, should be entered, so ordered.

Appellant recognizes that the cases cited by the district judge, and particularly United States v. Certain Parcels of Land, D.C., 131 F.Supp. 65, and our case of Anderson Tully v. U. S., 5 Cir., 189 F.2d 192, in the viewpoint taken in the opinions and in the results reached in the cases, if viewed apart from the precise language of the leases in those cases and in this, furnish strong support for the position of the government. Contending, however, that the two cases are distinguishable from this one in the terms of the leases and in the fact that this case is controlled by the law of Georgia, it earnestly urges upon us that it must be decided upon the language of the lease and upon the Georgia law of fixtures as between an ordinary landlord and tenant. Pointing out that the lease contains no provision for the restoration of the premises to their original condition as did the leases in some of the cases on which the government relies, and that, while it provides that "improvements placed on the land shall remain the property of the government", it goes on to provide as to the removal

2. "This matter is before the Court on the Government's motion for a summary judgment in favor of the County of Bibb for $5000.00 only. After a careful examination of the pleadings and admissions on file, including the statement dictated into the record this morning by Mr. Hall, Counsel for the County of Bibb, this Court is of the opinion that there is no genuine issue as to any material fact and that the County of Bibb is entitled to a judgment for $5,000 to be entered in the usual form of judgments in land condemnation cases. The Government's motion for such summary judgment is accordingly hereby granted. Counsel for the Government may prepare such judg-

ment and submit the same to Counsel for the County of Bibb, who shall have ten days.

"The facts in this case fully appear in the pleadings and in the record and are not set forth in this order. Authorities leading the Court to the conclusion above stated include Anderson Tully Co. v. United States, 5 Cir., 189 F.2d 192; U. S. v. Certain Parcels of Land, Southern Dist. of California, [D.C.,] 131 F.Supp. 65; Searl v. [School Dist. No. 2] U. S., 133 U.S. 553 [10 S.Ct. 374, 33 L.Ed. 740]; and C[harleston] & W. C. Railway Co. v. Huges [, 105 Ga. 1, 30 S.E. 972]."

thereof, "and may be removed therefrom by the government prior to the termination of this lease", appellant insists that Bibb County owned the land with the improvements on it and not merely the land, and was, therefore, entitled to compensation for the full value of the land as improved and not, as the judgment provides, for the value merely of the land without the improvements.

In short, appellant insists that in the face of the provisions of the lease and of the fact that the improvements were not removed prior to its termination, the court has erroneously decided the case as though the United States, the condemner, and not Bibb County, the condemnee, was the owner of the improvements.

We cannot agree with this view. We think that in putting it forward, appellant takes too restricted a view of the facts as a whole and of the controlling equitable principles and, by a bare bones argument which presents the case as a mere controversy between a Georgia landlord and tenant over fixtures, strips it of its life giving, its flesh and blood, elements. These, as the authorities declare them to be, may be thus briefly summarized: (1) Under the facts of this case, in the absence of an intent on the part of the United States to give and of Bibb County to receive as a gift the valuable improvements which in the interest of the war effort and with the consent and approval of Bibb County the United States had placed and maintained upon the land, it would be a clear perversion of justice to permit the invocation of the dry as dust legal principles as to fixtures controlling the relation of an ordinary landlord and tenant; and (2) When the United States or other governmental body has constructed improvements upon land not owned by it but of which it is in possession under circumstances such as this case presents, and brings proceedings to condemn the fee of the land, the equitable principle which condemns unjust enrichment prevents the value of these premises becoming a windfall to the owner of the

land in the guise of fair compensation. This court so held upon full consideration in Anderson-Tully Co. v. U. S., 5 Cir., 189 F.2d 192; and Searl v. School District, Lake County, 133 U.S. 553, 10 S.Ct. 374, 33 L.Ed. 740; Consolidated Turnpike Co. v. Norfolk, etc., Ry. Co., 228 U.S. 596, 33 S.Ct. 605, 57 L.Ed. 982; Charleston & W. C. Ry. Co. v. Hughes, 105 Ga. 1, 30 S.E. 972, are to the same effect. Cf. Jones v. Southern Ry. Co., 5 Cir., 285 F. 19, and United States v. Hayman, 7 Cir., 115 F.2d 599, at page 601.

In the Searl case the United States Supreme Court early gave a clear statement of these principles and their application, saying:

"The circuit court was not dealing with an action of ejection or trespass, but simply with a proceeding in the exercise of the right of eminent domain. That right is the offspring of political necessity, and is inseparable from sovereignty, unless denied to it by its fundamental law. It cannot be exercised except upon condition that just compensation shall be made to the owner, and it is the duty of the state, in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it. * * * The occupancy here was in no respect for a private purpose or pecuniary gain, but strictly and wholly for the public use. There could be no presumption that this public agent intended to confer public property upon a private individual." [133 U.S. 553, 10 S.Ct. 377.]

In Anderson-Tully Co. v. U. S., supra [189 F.2d 197], this court, upon full and careful consideration, announced and applied these principles in a case which cannot in substance be distinguished from this one. There, after discussing the law of fixtures as between landlord and tenant and pointing out that the principle contended for by defendant "has

been so often repudiated, qualified, and distinguished that it can hardly be regarded as the majority view", the court went on to say:

> "Its early formulation was undoubtedly influenced by the sound principle that the tenant should not be allowed after he has given up possession of the premises, to reenter and disturb the possession of succeeding interests. But when the tenant does not give up possession of the premises, all reason for the rule disappears. We think that the better view is that a lessee's right to remove erections made by him in furtherance of the purpose for which the premises were leased continues during his original term and during such further period of possession as he holds the premises under a right still to consider himself a tenant. (Citing cases.) * * *.

> "The Government's original entry was with consent of the owner and there is no showing of bad faith on its part. (Citing cases.)

> "But even if a contrary conclusion was warranted the appellant could derive no comfort therefrom because 'the general rule as to things affixed to the freehold by a trespasser or a person entering tortiously is not applicable as against a body having the power of eminent domain, and entering without leave, and making improvements for the public purpose for which it was created and given power.' Ill. Central RR. Co. v. LeBlanc, 74 Miss. 650, 673, 21 So. 760, 762. And the condemnor may later condemn the property without being required to pay more than the value of the land without improvements. (Citing cases.)"

Without, therefore, again laboring the matters there discussed, it will be sufficient to announce our continued adherence to the reasoning of that decision and the principles there applied.

The appellant's reliance on U. S. v. Hayman, 7 Cir., 115 F.2d 599, 601, in support of its contention, will not at all do. It is true that the quoted portion of the opinion does contain the dictum, "It is obvious that if the government should fail to remove the property before the expiration of the ninety days after the termination of the lease the United States would lose the value of the property".

It is further true, however, that in that case the lease had not expired, the United States was still in possession of the property under the lease, and the condemnee was trying to wring from the government an additional award because of the fact that by condemning the property the government would save itself the cost of removing the towers, and the paragraph on which appellant relies in this case was merely the preliminary statement required to set the stage for the real issue in the case which was decided thus:

> "As pointed out in plaintiff's brief the argument of the defendants resolves itself into the contention that the land in question has a higher than ordinary market value because of its special value to the United States. But such contention runs counter to the uniformly announced rule of the cases that the condemnee is compensated for his loss, or damages, and not for any special advantage or benefit which may come to the condemnor. As stated by the 'Supreme Court of the United States, the question is, What has the owner lost? not, What has the taker gained?' (Citing cases.)"

In principle, then, the Hayman case really stands for and gives effect to the position taken in the Searls case and espoused by us in this opinion, that it is the duty of the court "in the conduct of the inquest by which the compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it. * * * The occupancy here was in no respect for a private purpose or pecuniary gain, but strictly and wholly for the public use. There could be no

presumption that this public agent intended to confer public property upon a private individual." [133 U.S. 553, 10 S.Ct. 377.]

The judgment was right. It is affirmed.