**UNITED STATES of America,**
**Appellant,**

**v.**

**DELAWARE, LACKAWANNA & WESTERN RAILROAD COMPANY.**

**No. 12575.**

United States Court of Appeals
Third Circuit.

Argued Nov. 17, 1958.

Decided Feb. 26, 1959.

Rehearing Denied April 2, 1959.

S. Billingsley Hill, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Daniel H. Jenkins, U. S. Atty., Scranton, Pa., Harry T. Dolan, Sp. Asst. to Atty. Gen., Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

Walter L. Hill, Jr., Scranton, Pa. (Rowland L. Davis, Jr., New York City, Joseph C. Kreder, of Warren, Hill, Henkelman & McMenamin, Scranton, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a land condemnation case which on appeal presents three questions of law. The property involved is 15.3 acres in the heart of Scranton, Pennsylvania and was formerly used by the defendant railroad for repair and upkeep of its steam locomotives. On the land there are four main structures with from 450,000 to 480,000 square feet of space, including basements and mezzanines.

During the Korean War the United States contracted with the United States Hoffman Machinery Corporation for the production of large caliber shells. The arrangement was in the form of a supplies contract calling for the actual production of the shells and a facilities contract by which Hoffman undertook to obtain the use of a heavy industrial property which could be adapted at government expense to the required use. Hoffman's profit was to be realized solely on the production contract.

The property involved was subsequently leased in January 1953 by Hoffman from the D. L. & W. R. R. for a term of fifteen months at a rental of $500,000 with annual options for four years to renew at the end of each term for another year at a rent of $400,000 annually. Hoffman thereafter effected substantial repairs and improvements to the property in adapting it for the required use; the expert testimony variously estimated that the value of the premises was thereby enhanced by between $250,000 and $300,000. The United States reimbursed Hoffman for all these repairs and improvements under the terms of the facilities contract.

In August 1954 this condemnation proceeding was initiated by the United States; a jury trial was demanded. The defendant, however, moved for the appointment of a commission which the district court granted. The commission held hearings at which both sides introduced testimony primarily with regard to valuation of the property by experts. Following these the commission with findings of fact, conclusions of law and an opinion largely summarizing the testimony decided that the defendant property-owner was entitled to $1,720,-700. The district court affirmed this and overruled the objections of both parties.

## I.

The first question we have to decide is whether the district court erred in referring the matter to a commission rather than granting the jury trial requested by the government. Rule 71A (h) of the Federal Rules of Civil Proce-

dure affords the choice.[1] From the wording of the rule it is apparent that the choice is vested in the discretion of the court. The circumstances of the rule's genesis, which are set out both in 28 U.S.C.A. (Supp.1957) following its text and in 7 Moore's Federal Practice, ¶¶ 71 A.01–71 A.08; 71 A.90, confirm this.

Only one case from a Court of Appeals has reversed the reference to a commission, see United States v. Theimer, 10 Cir., 1952, 199 F.2d 501, although the Second Circuit has twice in connected cases expressed its disapproval of a reference. See United States v. Vater, 2 Cir., 1958, 259 F.2d 667; United States v. Bobinski, 2 Cir., 1957, 244 F.2d 299. Cases from the Fourth,[2] Fifth,[3] Eighth,[4] and Tenth[5] Circuits, however, have affirmed references under widely varying conditions. All these citations, plus those reported decisions of the district courts on the problem[6] (most of which made the reference) say nearly all that can be said on the point. Since the

choice is so largely within the discretion of the district court, since the character of the property involved is complex, and since the evaluation thereof is only to be fairly arrived at by a method involving complicated comparisons of numerous other properties, we are unwilling to say that the court erred in ordering the case to a commission.[7] However, we do not lose sight of the fact that among other things a reference to a commission tends unduly to prolong the proceedings, thereby causing vexation to all concerned and additional expense, in this instance to the government for accruing interest.

## II.

The second question presented is whether the United States was prejudiced by admission of evidence as to the terms of the lease between Hoffman and the defendant. It is asserted that the lease represented special value to the condemnor and is not evidence of market value and that since the commission fail-

1. "Rule 71A. Condemnation of Property * * *

   "(h) If the action involves the exercise of the power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it * * * *"

2. United States v. Cunningham, 1957, 246 F.2d 330.

3. United States v. Buhler, 1958, 254 F.2d 876.

4. United States v. Chamberlain Wholesale Grocery Co., 1955, 226 F.2d 492.

5. United States v. Waymire, 1953, 202 F. 2d 550; United States v. Wallace, 1952, 201 F.2d 65.

6. United States v. Certain Interests in Property in Cascade County, Montana, D.C.Mont.1958, 163 F.Supp. 518; United States v. 5,677.94 Acres of the Crow Reservation, Montana, D.C.Mont.1958, 162 F.Supp. 108; United States v. Fairfield Gardens, Inc., D.C.N.D.Cal.1958, 21 F.R.D. 370; United States v. Certain Tracts in City of Richmond, California, D.C.N.D.Cal.1957, 21 F.R.D. 389; United States v. 4.16 Acres in the Counties of El Dorado and Placer, California, D.C.N.D. Cal.1957, 20 F.R.D. 89; United States v. 1,584.11 Acres in Beaufort County, South Carolina, D.C.E.D.S.C.1956, 141 F.Supp. 720; United States v. 4.43 Acres in Tarrant County, Texas, D.C.N.D.Tex.1956, 137 F.Supp. 567; United States v. 1146.-32 Acres of Land, D.C.S.D.Tex.1955, 132 F.Supp. 681; United States v. 1,617.97 Acres in Johnson County, Iowa, D.C.S.D. Iowa, 1955, 18 F.R.D. 96; United States v. 2792.82 Acres in Aiken, Barnwell and Allendale Counties, South Carolina, D.C. E.D.S.C.1953, 114 F.Supp. 76.

7. The opinion below appears at United States v. 15.3 Acres of Land, More or Less, Situate in the City of Scranton, Lackawanna County, D.C.M.D.Pa.1955, 17 F.R.D. 337.

ed to indicate the relevancy which it attributed to this evidence, the United States was prejudiced. Even if it be assumed *arguendo* that the lease in effect was not evidence of fair market value we think it is clear that the commission recognized this. The only witness to rely on the annual rental was Doud, one of the defendant's three experts. By employing the usual income capitalization rates of 10% to 12% for this type of property, he arrived at an estimated value of from $3,330,000 up to $4,000,000, depending on which capitalization rate was used. Hinerfeld, defendant's second expert, took the annual rental as a starting point, but recognizing it as peculiar, capitalized it at 18% rather than at the usual rates. He also applied the capitalization method to what he considered a fair rental value for the property at the more usual rate of 10%. By these alternatives for the same method he arrived at a value of $2,250,000 for the property. Defendant's third witness, Gordon, also set up what was in his judgment a fair annual rental and capitalized this at 10% to arrive at a valuation of $2,250,000 also. Potter, the government's lone expert, set up a hypothetical fair rental value by a comparative method similar to that employed by Hinerfeld and Gordon, concluding that it would be $116,200; making allowance for the portion of that value contributed by the land and capitalizing the remainder at an annual return of 10% discounted for an estimated life of the buildings for twenty-five years, the witness ultimately arrived at a value for the property of $1,092,000. From this review it seems plain that the commission followed three of the four witnesses in attributing no relevancy to the annual rental afforded by the lease.

### III.

■ The final question is whether there shall be included in the value of the land at the date of taking the enhancement wrought through the repairs and improvements accomplished under the facilities contract. The district court agreed with the commission that the United States should pay for taking these since they had been incorporated into and had become an integral part of the realty, even though they had been made at government expense originally.

Whatever the rights of the parties concerned with the transaction might be in the absence of provisions in the lease, it is unquestionable that expressed intentions and understandings will govern. The twenty-ninth provision of the lease declares that upon termination Hoffman will vacate the premises and surrender them in good order, condition, and repair, reasonable wear and tear excepted. It further provides that Hoffman will on termination remove

" * * * all other property (including property furnished by the United States government * *) placed, installed or constructed upon or affixed to the demised premises by Lessee * * *

"Anything herein contained to the contrary notwithstanding, Lessee recognizes that the removal of property furnished by the United States government may result in structural damage to the demised premises, and accordingly hereby agrees that if the removal of any such property shall cause structural damage to the demised premises, Lessee will repair the same so as to put the premises into either substantially the condition existing prior to the installation of such removed property, reasonable wear and tear excepted, or in equally good serviceable condition * * *".

■ Thus the intention of the parties is abundantly clear that the lessor railroad was entitled to receive back at the term's end no more than what it delivered at the beginning. Nothing would have prevented the lessee from removing all the improvements made to the property during the leasehold term so long as the property was returned at term's end in substantially the condition it was delivered. No accessions to the property during the term would give the railroad

ownership of more than it had in the beginning and was entitled to at the end. That the lessee for practical considerations of cost would not have removed the new roof and windows, torn up new floors and paving, nor taken out new plumbing all in order to effect a restoration to the original state is irrelevant to this proceeding. What the reversioner would in all probability have gotten at the end of the term is not entirely pertinent in evaluating the property; rather, it is what the reversioner was entitled to as of right at the end of the term. With most respect we think that the Fifth Circuit panel which decided United States v. Five Parcels of Land in Harris County, Texas, 1950, 180 F.2d 75, one judge dissenting, reached an erroneous result by failing to take this consideration into account, and so we decline to follow that decision.

■ So far we have treated the problem as though it were simply one of deciding between the lessor and the lessee which of them was entitled to payment for the taking of certain property. But where the government is itself the lessee or can be put into the shoes of the lessee for some purposes at least—as here it can be by reason of its contract to indemnify Hoffman for the costs of making improvements—we would necessarily reach the same result despite the absence of expressed intention in the lease. For even though the improvements were to be considered as fixtures incorporated into the realty—being so regarded either because of a failure by the parties to express their intentions thereto or because of actually expressed intention in the lease—the law of fixtures would not ultimately control the special considerations of a condemnation case where the government had caused the improvements to be made originally. If the common law learning concerning fixtures were inflex-

ibly applied the result would frequently be a windfall to the property-owner and conversely would be tantamount to requiring the government to pay twice for the same thing. See Bibb County, Georgia v. United States, 5 Cir., 1957, 249 F. 2d 228; United States v. Smith, D.C.E. D.N.Y.1901, 110 F. 338. The compensation to be awarded must not only be just to the owner but it must be just to the public who is to pay for it. Searl v. School-District No. 2 in Lake County, 1890, 133 U.S. 553, 10 S.Ct. 374, 33 L.Ed. 740.

■ Where the government has an interest in the property prior to condemnation, the condemnation proceedings introduce an unanticipated and disrupting influence into the previously existing relationship. The adjustment which it is the function of the courts to make at this stage is not aided by reference to the law of fixtures. When condemnation proceedings must also determine the extent to which pre-existing government interests in the property affect the owner's right to compensation the rules regarding fixtures and movables are inapposite. Those rules were formulated in the light of what was fair between the landlord and tenant who had failed to express their intention concerning property brought onto the premises by the tenant; cf. Anderson-Tully Co. v. United States, 5 Cir., 1951, 189 F.2d 192, 196; they have no direct application in condemnation proceedings where the government already has an interest in the property.

For the reasons stated we conclude that the defendant property-owner is not entitled to receive payment for the enhancement to the value of the premises effected by Hoffman after the lease was entered. The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.