295 F.2d 381
 UNITED STATES of America, Plaintiff-Appellant,
v.
CERTAIN SPACE IN the Building Known as RAND McNALLY BUILDING IN CHICAGO, COOK COUNTY, ILLINOIS, et al., Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellee,
v.
CERTAIN SPACE IN the Building Known as RAND McNALLY BUILDING IN CHICAGO, COOK COUNTY, ILLINOIS, et al., Defendants-Appellants.
 No. 13249.
 No. 13271.
 United States Court of Appeals Seventh Circuit.
 October 30, 1961.
 
 Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., James P. O'Brien, U. S. Atty., Chicago, Ill., Luther D. Swanstrom, Asst. U. S. Atty., Chicago, Ill., for appellants.
 Howard Ellis, Don H. Reuben, George D. Newton, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, and Saul A. Epton, of Epton, Scott, McCarthy & Epton, Chicago, Ill., Kirkland, Ellis, Hodson, Chaffetz & Masters, Epton, Scott, McCarthy & Epton, Chicago, Ill., of counsel, for appellees.
 Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 These appeals are from a judgment entered by the District Court on a jury verdict in a condemnation proceeding brought by the government. The United States, plaintiff-appellant in No. 13249, seeks a reversal. It contends the District Court erred in ruling on elements to be considered in determining the compensation to be awarded. The defendants, appellants in No. 13271, limit their appeal to that portion of the judgment order which applies to the reduction of principal the entire amount of an additional deposit made by the government after its initial deposit made with its declaration of taking. Defendants assert the District Court erred in not applying the second deposit first upon interest and then upon principal.
 
 
 2
 The subject matter of the acquisition is the land and structure known as the Rand-McNally Building in Chicago.[1] The suit was originally instituted against three tenants, a lease to the United States having been executed by the building owner. Subsequently the proceeding was amended to acquire the fee title. The lease was executed in 1951 for a little over five years with an option of the government for an additional five years. It provided:
 
 
 3
 "8. The Government shall have the right, during the existence of this lease, to make alterations, attach fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased, at its expense, provided if there are any other tenants or occupants, such alterations, additions, structures or signs shall not be detrimental to or inconsistent with the rights granted to other tenants in the property or in the building. Additions placed in or upon or attached to the said premises, if removable without damage to the building or the premises, shall be and remain the property of the Government and may be removed therefrom by the Government prior to the termination of the lease: provided, however, that no structural alterations shall be removed at any time. Structural alterations, without limiting its generality, includes the heating system and boilers and fuel facilities, electrical distribution system and circuits (but not detachable lighting fixtures), elevators, plumbing facilities, walls, ceilings, floors, duct work, sprinklers, etc."
 
 
 4
 * * * * * *
 
 
 5
 "18. At the termination of this lease by lapse of time or otherwise, Government shall return the premises in good and tenantable condition for office and related warehouse uses (including adequate lighting and lighting fixtures for such purposes), ordinary wear and loss by fire excepted, failing which the Lessor may place the premises in such condition and the Government shall pay the cost thereof * * *.
 
 
 6
 * * * * *
 
 
 7
 "25. * * * In the event, however, that the Government should institute any condemnation proceedings, in order to obtain possession of any premises hereby demised, it is agreed by and between the parties that this lease agreement may be introduced in evidence as a stipulation between the parties hereto and any award not inconsistent therewith may be entered."
 
 
 8
 The United States took possession in the fall of 1951 and commenced substantial alterations. Some $2,370,000 was spent in extensive remodeling which, in effect converted the structure from a warehouse and loft building to an office building. The amendment of the complaint to acquire the fee title was made on December 29, 1955 and on June 18, 1956 a declaration of taking of fee title was filed and estimated compensation of $2,000,000 deposited.
 
 
 9
 Preliminary rulings made prior to the commencement of the trial before the jury, and to which the government objected, required that in determining the compensation to be awarded the building be considered as it existed on the filing of the amendment to the petition, as then enhanced by the non-removable additions or improvements. The trial proceeded and the case was submitted to the jury on that basis. The government contended that the compensation should be determined by reference to the physical condition of the premises as it existed in 1951 prior to any improvements or alterations by the government as lessee, valued as of the date of the amendment to the petition.
 
 
 10
 The contested issue presented by the government's appeal is whether where the government is occupying premises under a lease which contemplates improvements which are not to be removed and exercises its power of eminent domain enhanced value attributable to such improvements is to be excluded in determining the compensation to be awarded.
 
 
 11
 The government relies primarily upon Searl v. School District, 133 U.S. 553, 10 S.Ct. 374, 33 L.Ed. 740; Bibb County, Georgia v. United States, 5 Cir., 249 F.2d 228; United States v. Delaware, Lackawanna & Western Ry. Co., 3 Cir., 264 F.2d 112, certiorari denied 361 U.S. 819, 80 S.Ct. 63, 4 L.Ed.2d 65; Anderson-Tully Co. v. United States, 5 Cir., 189 F.2d 192 and United States v. Hayman, 7 Cir., 115 F.2d 599. But those cases involve situations which are inapposite. In both Searl and Bibb the improvements were made in the absence of a lease and placed on the realty under a mistaken assumption of ownership. In Bibb a subsequent lease was made with the owner which provided that all improvements were the property of the government and could be removed by it. In Anderson-Tully the leases provided that the alterations, fixtures and structures erected by the government should remain its property and might be removed prior to termination of the lease. Likewise, in Lackawanna the lease authorized removal of the improvements. Moreover, Lackawanna recognized (264 F.2d at page 117) that "it is what the reversioner was entitled to as of right at the end of the term" which is controlling and that such right is to be measured by the terms of the lease, from which the court found (264 F.2d at page 116) "the intention of the parties is abundantly clear that the lessor railroad was entitled to receive back at the term's end no more than what it delivered at the beginning."
 
 
 12
 From the terms of the lease here involved it is abundantly clear that alterations and improvements were contemplated and that the structural alterations, as therein defined, were not to be removed but the premises surrendered at the termination of the lease in its converted form "in good and tenantable condition for office and related warehouse use". The intention here is clearly expressed. The rights of the parties are to be controlled thereby and in our opinion the rationale of United States v. Five Parcels of Land, etc., 5 Cir., 180 F.2d 75 applies.[2] We do not regard our decision in United States v. Hayman, 7 Cir., 115 F.2d 599 as expressing a contrary view. There the government had the privilege of removing beacon towers it had placed on the property during the life of the lease and we held the trial court did not err in excluding evidence respecting the cost of removal which the property owner sought to introduce under the theory that the fair market value of the land would be enhanced by the fact that prospective purchasers would take into consideration the government's willingness either to renew the lease or to purchase the property in order to avoid the expense incident to removal of the towers. It was pointed out that such an argument resolved itself into a contention that the land had a higher than ordinary market value because of special value to the government which ran afoul of the rule that a condemnee is compensated for his loss, or damage, and not for any special advantage or benefit to the condemnor.
 
 
 13
 We have considered the additional contentions made by the government in support of its appeal and find them without merit. The validity of the lease under the Economy Act[3] was sustained in Meyer v. United States, 159 F.Supp. 333 a Courts of Claims action between the owner of the property and the government. We do not regard it as open to reconsideration here. Nor were the non-removable improvements additional "rental" even if it be assumed that the possibility of their benefit to the landowner may have furnished an inducement to the making of the lease. Moreover, the improvements here involved were made pursuant to a determination certified by the Administrator, General Services Administration as authorized by 40 U.S.C.A. § 490 and thus removed from the limitations imposed by the Economy Act.
 
 
 14
 We conclude that the District Court did not err in refusing to exclude the non-removable improvements from consideration in the determination of the compensation to be awarded. When made they became the property of the landowner by the contract of the parties and the property rights of the landowner therein were taken and extinguished by the government's exercise of its power of eminent domain.
 
 
 15
 Subsequent to the initial $2,000,000 deposit made with the declaration of taking on June 18, 1956 the government, on August 30, 1957, made an additional deposit of $500,000. The judgment entered on the jury's verdict adjudicated the compensation to be paid for the property to be $4,825,000. The District Court in its judgment order directed payment of $2,325,000 with interest at 6 per cent per annum from August 30, 1957 until date of payment in satisfaction of its judgment. In so doing the court allowed interest at 6 per cent per annum from June 18, 1956 to and including August 29, 1957 on the sum of $2,825,000 and gave full credit to principal for each of the deposits. Cf. United States v. 44.00 Acres of Land, etc., 2 Cir., 234 F.2d 410, certiorari denied Odenbach v. United States, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123, which involved multiple deposits and affirmed the same method of computation although it was assailed on a different ground.
 
 
 16
 Defendants in their appeal contend that the court erred in not applying the $500,000.00 deposit first to interest and then to principal. But to so do would in effect allow interest on part of the fund deposited contrary to the express command of 40 U.S.C.A. § 258a that:
 
 
 17
 "* * * said judgment shall include, as a part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. * *" (Emphasis supplied.)
 
 
 18
 One of the two-fold purposes of the statute is to relieve the government of the burden of interest accruing on the sum deposited from the date of the taking to the date of judgment. United States v. Miller, 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. 336. The deposit is made to escape liability for accruing interest. Atlantic Coast Line R. Co. v. United States, 5 Cir., 132 F.2d 959, 962. And the statute can fulfill this function only if the deposit is applied to principal.
 
 
 19
 Defendants are not entitled to have the $500,000 deposit applied in the manner for which they contend.[4]
 
 
 20
 In our opinion the District Court did not err in its computation or allowance of interest.
 
 
 21
 A motion of the government to strike portions of the defendants' brief was not timely filed. Our order permitting filing of the government's reply brief instanter did not include the accompanying motion and therefore we do not consider the motion.
 
 
 22
 In each of the appeals the judgment order is affirmed.
 
 
 23
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Other litigation related to the acquisition is referred to and set forth in our opinions in Merchants Matrix Cut Syndicate v. United States, 7 Cir., 259 F.2d 747, certiorari denied 359 U.S. 991, 79 S.Ct. 1121, 3 L.Ed.2d 980 and Merchants Matrix Cut Snydicate, Inc. v. United States, 7 Cir., 284 F.2d 456
 
 
 [2]
 See also United States v. Certain Parcels of Land, etc., D.C., 90 F.Supp. 27 and United States v. 52.67 Acres of Land, etc., D.C., 150 F.Supp. 347
 
 
 [3]
 40 U.S.C.A. § 278a
 
 
 [4]
 A ruling that the initial deposit of $2,000,000 was made in "gross bad faith and/or manifest and palpable error" was vacated, without objection of defendants, concurrently with the second deposit. It is therefore not necessary to consider what effect, if any, bad faith in arriving at the estimated compensation deposited might have on the question of interest