**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant,**

v.

**ONE PARCEL OF LAND IN FAIRFAX COUNTY, VIRGINIA; First American Bank of Virginia; Eugene N. Hooper; Celeste Hooper; J. Willard Marriott, Jr.; Richard E. Marriott; Nancy P. Marriott and unknown owners, Appellees.**

**No. 85–1200.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1985.

Decided Jan. 2, 1986.

William B. Lazarus (Roger J. Marzulla, Acting Asst. Atty. Gen., Washington, D.C., Elsie L. Munsell, U.S. Atty., Thomas K. Berger, Asst. U.S. Atty., Alexandria, Va., John L. Davis, Martin W. Matzen, Washington, D.C., on brief), for appellant.

Stephen K. Fox (Marc E. Bettius, Bettius, Fox & Shumate, P.C., Fairfax, Va., on brief), for appellees.

Before HALL, MURNAGHAN, and WILKINSON, Circuit Judges.

MURNAGHAN Circuit Judge:

### I.

A case in condemnation centers on the proper valuation of a piece of property in Fairfax County, Virginia which was taken by the Washington Metropolitan Area Transit Authority ("WMATA") for construction of a rapid rail transit system ("Metro") and related facilities, including a station. Prior to WMATA's condemnation of the land on May 31, 1984 it had obtained from the owners ("the owners") a right of entry onto the land dated June 15, 1982 in order to facilitate its construction of a station on an adjacent piece of property which WMATA had already purchased.[1] For a fee of one dollar, WMATA was given a right of entry for construction purposes onto the land effective April 12, 1982. The agreement also stated that its execution by the owners "does not waive or otherwise foreclose the right of the owner to just compensation, for the acquisition of the rights required ... by WMATA, in any future settlement or condemnation of the property."

Between June 15, 1982 and the time of the condemnation WMATA and the owners attempted to agree on a purchase price for the land, but were unable to do so. On May 31, 1984, WMATA filed a complaint in condemnation, along with a deposit of $76,-300 as estimated just compensation. After

---

1. In the subsequent condemnation proceeding, WMATA condemned 44,717 square feet of the owners' parcel of land, which contained a total of 129,569 square feet.

the owners answered, the parties made a joint stipulation on August 20, 1984 that WMATA had the right to condemn the land. The stipulation stated that "the amount of just compensation to be paid for the land condemned is the only issue before the court."

After discovery was conducted, trial was set for January 2, 1985. In late December, 1984, both WMATA and the owners filed cross-motions *in limine* directed towards introduction at trial of evidence of "improvements" made by WMATA to the subject land during WMATA's right of entry. The owners sought to recover the value of the land including any improvements made by WMATA prior to condemnation, while WMATA claimed that the value of the condemned parcel should be ascertained as if the WMATA improvements had not taken place.

WMATA's position was that just compensation for its taking of the subject parcel had to be determined by "the fair market value of the said parcel unimproved by the plaintiff," which meant that the court had "[to] exclude all other evidence and testimony of market value which values the said parcel enhanced in value by the plaintiff's improvements." For their part, the owners requested that evidence concerning WMATA's improvements be disregarded and that evidence should only be considered of the value of land at the time of the condemnation in its then existing condition. Specifically, the owners wanted the court to exclude all evidence introduced to reduce the land condemned to its unimproved state. In particular, they sought to keep out testimony regarding WMATA's installation of a box culvert at a cost of $120,000 and its bringing in of 25,000 cubic yards of earth borrow on the property at an estimated cost of $200,000. The owners

also wanted excluded the estimated cost of a sprinkler system which would have had to be installed in the building which the parties agreed was the best and highest use of the land.

On December 28 both motions *in limine* came before the district court, which ruled in favor of the owners and against WMATA. The district court held that in view of the nominal entry fee of one dollar, "it had to be contemplated by the parties that any improvements made by WMATA to the property under that right of entry agreement would revert to the landowner in lieu of rent." [2] The court ruled that evidence at trial of the fair market value would be determined as of the time of condemnation and "any improvements that were on the property at that time that had been made by WMATA were property of the landowners and they are entitled to compensation for that." [3]

In an attempt to safeguard the determination at trial of the value of the condemned land in the case of subsequent proceedings on appeal, the district court urged the parties to agree on the value of the improvements, so that the sum could be subtracted from the condemnation award, in the event this court should overturn the decision made on the motions *in limine*. The parties were unable to do so, however.

The case proceeded to trial on January 2, 1985 and counsel waived trial by jury part way into the proceedings. The trial consisted of introduction by the parties of contradictory expert testimony concerning the fair market value of the property without reference to improvements and the value both of the land taken directly by WMATA as well as the diminished value of the re-

---

**2.** We do not read the provision for a nominal entry fee as intimating that improvements would revert to the owners, but rather that the owners stood to benefit significantly from the construction of a Metro station in close vicinity to their land. Given the tremendous rise in the value of the owners' remaining land, a nominal entry fee, without other contemplated compensation, was entirely reasonable.

**3.** As a result of the evidentiary ruling, evidence at trial did not address the unimproved value of the property at the time of the condemnation. We conclude, for reasons adduced below, that error was thereby committed.

maining portion of the owners' property due to that taking.

After a bench trial, the district court accepted the owners' testimony as to the value of the property. The district court found that the original parcel of land could have held an office building of 56,944 square feet, but after condemnation of a portion of the owners' land, the remaining parcel could only accommodate a building of 28,333 feet. The district court also calculated that the value of the 44,717 square feet of land directly taken by WMATA was $275,010 [4] and that the diminution of the value of the owners' remaining property due to the taking was $109,990.[5] The district court arrived at a total value of $385,000 which it rounded off to $381,000.

· As regards the value of the improvements made by WMATA, the district court determined that valuation as of the time of condemnation was properly at the improved condition, with the benefits of the improvements redounding to the credit of the owners. Recognizing the possibility that a different view might obtain on appeal, and commendably seeking to avoid, if possible, a complete new trial, the district court found that, in the case of remand, the value of the 25,000 cubic yards of earth borrow which WMATA had placed on the property during its right of entry was worth $2 a square yard, or a total value of $50,000, but decided that WMATA should be given no compensation for the box culvert or potential sprinkler system, in case of remand.

On January 11, 1985 a final order was entered by the district court as to the valuation of the condemned property. WMATA here appeals from that order and ar-

gues that the court erred in allowing the improved value of the property to be taken into account for the benefit of the owners. WMATA also argues that the manner employed by the district court to establish the value of the improvements made by WMATA was erroneous. We reverse and remand for a correct determination of the unimproved value of the land taken by WMATA at the time of the condemnation.

## II.

WMATA's argument is that the district court should have allowed it to introduce evidence of the value of the property in its unimproved state. WMATA goes further and urges that the correct value of the land unimproved should be its worth prior to the right of entry, *i.e.*, prior to the June 15, 1982 agreement. WMATA argues that the owners would be unjustly enriched if they were to be awarded more than their just compensation as guaranteed by the Fifth Amendment to the United States Constitution.

WMATA objects to paying twice for the same improvements, the first time when it erected an improvement and the second upon condemning the property in its improved state. In support of its argument WMATA argues that it would not be fair for the public to pay compensation for improvements erected by the taking authority and then to give the owner of the land a windfall by paying him for improvements erected by another. *Bibb County, Georgia v. United States*, 249 F.2d 228, 230 (5th Cir.1957); *United States v. Delaware, Lackawanna & W.R. Co.*, 264 F.2d 112, 117 (3rd Cir.1959).[6]

---

**4.** The court relied on owners' expert testimony concerning comparable sales figures in Fairfax County. However, it is not clear from the record whether those comparable sales figures were derived from sales of unimproved or improved properties. However, in light of the district court's ruling on the motions *in limine,* presumably the figures dealt with improved properties. On remand, testimony should specifically address the question of the value of the subject property unimproved.

**5.** The court calculated the value of the remaining 84,852 square feet of property also at a value of $6.18 per square foot, *i.e.,* $529,990 total. After the taking, the value of the remaining property was $420,000 because only a smaller building could be erected on the site. The resulting loss to the owners because of the taking amounted to $109,990.

**6.** There are other cases which hold that improvements should be taken into account in determining the value of the taken property. *See United States v. Five Parcels of Land, Harris*

WMATA also takes issue with the district court's construction of the June 15, 1982 right of entry agreement. According to WMATA, the lack of any language in the agreement which would support an interpretation to the effect that the one dollar rent was given in return for the owners' receiving the value of improvements erected by WMATA makes it "irrational" to give the owners $195,000 for a two year right of entry.[7] Instead, WMATA argues, the nominal entry fee reflects a recognition by the parties that the owners' property remaining after the condemnation would increase in value simply because of the Metro station's location in a place of convenient proximity.

WMATA finally takes issue with the district court's finding that the earth borrow improvements made by WMATA were worth only $50,000. WMATA argues that the district court incorrectly assumed that it could determine a value for those improvements and then simply subtract it from the improved value of the land. Such a method does not take into account the value of the land before improvements, which may be quite different from the value of the land improved less the value of the improvements.

### III.

We agree with WMATA's arguments in all respects but one. We agree that it was error for the district court not to hear evidence of the unimproved value of the land taken by WMATA. We also hold it was error for the district court to subtract the value of the improvements from the value of the land improved in order to establish the unimproved value. The value of the land in its unimproved state is not accurately reflected by such an approach.[8] However, we do not agree with WMATA that the value of the land unimproved should be assessed as of the date of the entry agreement. Under principles of eminent domain law, the date of the condemnation, *i.e.*, May 31, 1984, controls.

■ Although courts are often ill-equipped to umpire between competing experts with their typical parade of appraiser's argot and jargon in evaluation cases, there are certain guideposts for courts in determining questions of valuation. *See* L. Orgel, *Valuation in Eminent Domain*, § 1, 1–2. The first is that owners should be awarded only *just* compensation for what has actually been taken. This means that they should not be given a windfall for value added to the property.

■ When we apply that principle to the case at hand, the district court's decision to value the land after and including the improvements made to the land at WMATA's expense was improper. Although there was testimony concerning the market value and potential use of the subject land, that testimony did not address the more fundamental question of the value of the taken land in its unimproved state.

■ Testimony about the value of similar properties in Fairfax County may be proper, but that testimony should address the value of such properties in their unim-

---

*County, Texas,* 180 F.2d 75 (5th Cir.1950), *cert. denied,* 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597 (1950) and *United States v. Certain Space in Rand McNally Building,* 295 F.2d 381 (7th Cir. 1961). Those cases, according to WMATA, were either wrongly decided or distinguishable, in that they rest on the terms of an explicit agreement, such as a lease, that improvements made by the owner would accrue at the end of the lease term to the owner of the land. We note that those cases were criticized in *Delaware, Lackawanna & W.R. Co., supra,* 264 F.2d at 117, and in *Bibb County, supra,* 249 F.2d at 229–230, where it was pointed out that specific terms in the agreements allowed for such a construction. Here, in all events, there was no such specific

term in the right of entry agreement and the rule of those decisions is therefore inapplicable.

7. WMATA's own figures for the value of the taken property are $290,000 for the improved value of the property and $95,000 for its unimproved value.

8. It should be noted that the presence of the 50,000 yards of fill may turn out to play no part in valuing the land in its unimproved state. It, on the other hand, may have improved the value by an amount well in excess of $50,000. We, of course, express no opinion on the subject, it being a matter for factual resolution upon retrial.

proved condition. In order to arrive at a figure which is "just, not merely to the individual whose property is taken, but to the public which is to pay for it," the district court, on remand, must determine the value of the land taken in its unimproved state. *Bibb County, Georgia v. United States*, 249 F.2d at 231; *United States v. Delaware, Lackawanna & W.R. Co.*, 264 F.2d at 117.

■ Similarly, because there was no clear determination of the value of the property unimproved, the $50,000 figure for the improvements erected by WMATA arrived at by the district court cannot simply be subtracted from the award. The value of the property unimproved must be assessed independently. The value of the improvements made by WMATA cannot be used as a substitute for that determination.

■ WMATA's argument that the value of the property should be determined at the time of the right of entry is incorrect. The value of the taken property should be assessed at the time of the taking, in this case on May 31, 1984. *United States v. Miller*, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943). WMATA waited until May 31, 1984 to initiate condemnation proceedings, rather than proceeding earlier, and it must, as a consequence, pay for the enhancement in value of the property due to its ongoing construction of the Metro station in the vicinity of the property. Had the land, in the interim, declined in value, WMATA as condemnor would have reaped an advantage from its delay. The converse is true where the delay in deciding to condemn resulted in a value increase. Under the reading of the right of entry agreement urged by WMATA and accepted by us, the parties contemplated that the nominal fee for the right of entry reflected the fact that the owners would be compensated by the increased value of their property from the location of the Metro in the vicinity. Although WMATA has taken only a portion of that property, the value of the entire parcel of land has risen because of WMATA's construction of a station. WMATA could have foreseen and averted the situation by initiating earlier condemnation proceedings.

REVERSED AND REMANDED.