106 F.3d 411
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
16.25 ACRES OF LAND, MORE OR LESS, SITUATED IN THE FOURTH
JUDICIAL DISTRICT, FAIRBANKS RECORDING DISTRICT,
STATE OF ALASKA, Defendant,
and
Westours Motorcoaches, Inc., Defendant-Appellant.
 No. 95-36115.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 8, 1997.
Decided Jan. 14, 1997.
 
 Before: WRIGHT, CANBY and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Westours appeals the district court's grant of summary judgment in favor of the government. The court held that the government, in its action to condemn land it had leased from a series of owners culminating in Westours, was not required to compensate Westours for the value of a "permafrost tunnel" constructed by the government in 1963-64. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * At the height of the cold war, the government became interested in evaluating tunneling techniques in frozen soil. In 1962 the Army entered a five-year lease for the parcel of land at issue near Fox, Alaska with its then-owner, United States Smelting, Refining and Mining Company. The lease provided for rent of $100 per year and contained these relevant provisions:
 
 
 4
 5. The Government shall have the right, during the existence of this lease[,] to attach fixtures, and erect structures or signs, in or upon the premises hereby leased, which fixtures and structures, or signs, so placed in, upon or attached to the said premises shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government,*
 
 
 5
 (emphasis added). The lease was renewed in 1967 for ten years.
 
 
 6
 In 1977 the government entered a two-year lease with the new owner, Alaska Gold Company. It increased the rent to $500 per year and omitted the addendum to paragraph five of the original lease. It was renewed for two years in 1979, five years in 1981, and five years in 1986. The 1981 lease increased the rent to $3,900 per year.
 
 
 7
 Westours acquired the land in 1989 for $115,000. In 1991 the government and Westours entered a two-year lease with the rent increased to $5,100 per year and providing:
 
 
 8
 5. The Government shall have the right, during the existence of this lease[,] to attach fixtures, and erect structures or signs, in or upon the premises hereby leased, which fixtures and structures, or signs, so placed in, upon or attached to the said premises shall remain the property of the Government and may be removed or otherwise disposed of by the Government.
 
 
 9
 (emphasis added). In April 1993 the lease was extended through July 31, 1993. On July 28, 1993 it was extended through November 30, 1993, and the rent was increased to $18,000 per year.
 
 
 10
 Prior to the termination of the lease, the government filed a complaint, notice of condemnation, and declaration of taking. The court granted the government's motion for summary judgment and denied Westours' motion. It timely appeals.
 
 II
 
 11
 We review de novo both the grant of summary judgment, United States v. 42.13 Acres of Land, 73 F.3d 953, 955 (9th Cir.1995), and principles of contract interpretation applied to facts, Aetna Casualty and Surety Co., Inc. v. Pintlar Corp., 948 F.2d 1507, 1511 (9th Cir.1991).
 
 
 12
 The terms of the lease determine whether a landowner should be compensated for the value of improvements constructed by the government on leased land. United States v. Delaware, Lackawanna & Western Railroad Co., 264 F.2d 112, 116 (3d Cir.1959) ("Whatever the rights of the parties ... in the absence of provisions in the lease, it is unquestionable that expressed intentions and understandings will govern."); United States v. Certain Space in Rand McNally Building, 295 F.2d 381, 383 (7th Cir.1961); Anderson-Tully Co. v. United States, 189 F.2d 192, 196 (5th Cir.1951); United States v. Five Parcels of Land, 180 F.2d 75, 77 (5th Cir.1950). There is no dispute that Westours bought the property with notice of the government's lease; the question, therefore, is what Westours would have been entitled to at its expiration. Delaware, Lackawanna & Western Railroad Co., 264 F.2d at 116-117.
 
 
 13
 All versions of the lease provided that the government owned "structures" it placed on the land and could "remove or otherwise dispose of" them. If the tunnel is not a structure within the terms of the lease, then nothing in the lease authorized its construction. Because the government's purpose in leasing the land was to construct the tunnel, and because it was such an unusual and invasive use, the parties likely intended the term "structures" to include the tunnel. Moreover, a tunnel seems to be precisely the type of "structure" that would be placed "in" the land as contemplated by paragraph five.[1] Finally, by providing that structures could be removed or "otherwise disposed of" the lease appears to have contemplated that "structures" would include non-removable improvements to the land such as the tunnel. We conclude that the tunnel is a "structure" within the meaning of the lease and hold that the government was not required to include its value in Westours' compensation.
 
 
 14
 We reject Westours' argument that either of the first two leases transferred ownership of the tunnel to the landlord six months after they expired. Westours relies on an outdated rule that a tenant loses the right to retrieve fixtures or improvements placed on leased land when the tenant either renews or takes a new lease that does not mention the fixtures or improvements. Anderson-Tully persuasively rejected this rule:
 
 
 15
 [This rule] has been so often repudiated, qualified and distinguished that it can hardly be regarded as the majority view. Its early formulation was undoubtedly influenced by the sound principle that the tenant should not be allowed after he has given up possession of the premises, to reenter and disturb the possession of succeeding interests. But when the tenant does not give up possession of the premises, all reason for the rule disappears. We think the better view is that a lessee's right to remove erections made by him in furtherance of the purpose for which the premises were leased continues during such further period of possession as he holds the premises under a right still to consider himself a tenant.
 
 
 16
 189 F.2d at 197 (footnotes omitted). See also Chatham Gold Dredging Co. v. Burns, 84 F.2d 717, 719-720 (9th Cir.1936) ("A lessee's right to remove fixtures continues during his original term, and during such further period of possession by him, as he holds the premises under a right still to consider himself a tenant."). The government has continuously occupied the land since 1962 under leases that have always provided that government improvements to the land belong to the government, and that it has the right to remove or otherwise dispose of such improvements.
 
 
 17
 Westours' remaining arguments lack merit. The judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 *
 Add to # 5: provided however that the right to remove herein granted shall be exercised within six (6) months after expiration or earlier termination of this lease and any such fixtures, structures, or signs that are not so removed within said period shall be considered abandoned by the Government
 
 
 [1]
 According to Black's Law Dictionary (6th ed. 1990), a "structure" includes "[a] combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land."