**UNITED STATES of America, Plaintiff**

v.

**223.50 ACRES OF LAND, SITUATED IN LOWNDES COUNTY, MISSISSIPPI and Dora Estes Hill et al., Defendants.**

**No. EC 77–114.**

United States District Court,
N. D. Mississippi, E. D.

Sept. 6, 1979.

William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for plaintiff.

DeWitt T. Hicks, Jr., Lydia M. Quarles, Ralph E. Rood, Gholson, Hicks & Nichols, Columbus, Miss., for Wiygul, Wiygul, Pribble and Unimap.

Henry T. Holifield, Gary Geeslin, Threadgill & Smith, Columbus, Miss., for bank.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court on plaintiff's (hereinafter "government") Motion for the Court to Amend its Findings and Amend Judgment and the defendants' (hereinafter "landowner") subsequent Motion to Vacate Judgment under Rule 60(b)(6), Fed.R.Civ.P.

The land here involved consists of 137.5 acres bounded on the North by the Tombigbee River and on the South by a two-lane, paved state road. The government is taking 90 acres of this land for the public use, leaving 47.5 acres after the taking.

The ultimate findings of the Commissioners are contained in the last four pages of their report as follows:

The Commissioners find that the highest and best use of this property, on the date of taking, and considering such use in the reasonably foreseeable future thereafter, should fall into three categories, to wit:

(a) Ten (10) acres lying along the road frontage on the south, having an immediate future use as low density, rural-residential property, to be valued at the date of taking in an amount of Two Thousand Dollars ($2,000.00) per acre, or a total of Twenty Thousand Dollars ($20,000.00).

(b) The improvements upon the aforementioned 10 acre tract of land, being the home occupied by Mrs. Green and the buildings within its curtilage, to be valued in an amount of Twenty-Two Thousand, Five Hundred Dollars ($22,500.00).

(c) Thirty-seven and one-half (37½) acres of land, proceeding from the aforementioned 10 acre tract, northwardly, along the level portion of this land, having such highest and best use as transitional (agricultural-rural residential) land, with an immediate use for pasture land, but with a use in the reasonably foreseeable future for low density, rural residential development, to be accomplished with a minimum expense and risk to the developer, and to be so valued at the rate of Sixteen Hundred Dollars ($1,600.00) per acre, for a total value of this tract of Sixty Thousand Dollars ($60,000.00).

(d) Forty (40) acres of land, proceeding from the tract last mentioned, northwardly to the bluff along the extreme northern end of the property, and eastwardly, across the level portion of this land and onto its slopes, which had such highest and best use also as transitional (agricultural-rural residential) land, in the manner of the land of the aforementioned 37½ acre tract. This land is not as level as that land in the aforementioned 37½ acre tract, and it is more remote from the paved highway, but it does have the bluff on the northern end of this property as an increment to its value, and therefore this tract is also valued at the rate of Sixteen Hundred Dollars ($1,600.00) per acre, for a total value of this unit in the amount of Sixty-four Thousand Dollars ($64,000.00).

(e) Fifty (50) acres of land, being that on the lower end of the slopes, and against the river, which had as its highest and best use, at the time of its taking, timber land, with a ratable value of Three Hundred Dollars ($300.00) per acre at the time of the taking, yielding a total value for this tract of Fifteen Thousand Dollars ($15,000.00).

The entire value of this total 137½ acre tract of land, immediately before the taking, is therefore found to be One Hundred Eighty-One Thousand, Five Hundred Dollars ($181,500.00).

The Commissioners find that the property remaining after the taking includes:

(a) The aforementioned 10 acre tract of rural, residential land, valued at Two Thousand Dollars ($2,000.00) per acre, totaling Twenty Thousand Dollars ($20,000.00).

(b) The aforementioned improvements, valued at Twenty-two Thousand, Five Hundred Dollars ($22,500.00).

(c) 37½ acres of the aforementioned transitional (agricultural-rural residential) land, from the aforementioned 37.5 and 40 acres tracts of such land, valued at Sixteen Hundred Dollars ($1,600.00) per acre, or a total of Sixty Thousand Dollars ($60,000.00).

The entire value of the lands and improvements remaining total One Hundred Two Thousand, Five Hundred Dollars ($102,500.00), immediately after the taking. No value has been found for the unsevered timber upon the land taken, or remaining, except as it does constitute an

enhancement of the value to these lands, generally.

We find, therefore, that just compensation should be awarded to the Defendant, as damages for this taking, in the total sum of Seventy-Nine Thousand Dollars ($79,000.00).

The Commissioners' Report was filed with the clerk on July 24, 1978. The government and the landowner filed timely objections, supported by memoranda. The court, after due consideration, released its Memorandum of Decision on March 9, 1979, 473 F.Supp. 875, affirming the report and overruling the objections of both parties.

The government has filed a timely request for reconsideration. The landowner has filed a motion to vacate the judgment pursuant to the power conferred upon the court by Rule 60(b)(6), Fed.R.Civ.P., to vacate a judgment for "any other reason justifying relief from the operation of the judgment". The government seeks an order modifying "the report to conform to the probative evidence in the record". The parties have filed elaborate memoranda and the matter is now ripe for decision.

The government originally objected to the report on two grounds: one, that the commissioners included "an excessive amount of acreage in the transition stage from agricultural to residential"; and, two, "an excessive valuation on the acreage in the transition stage from agricultural to residential."

The government contended in its original presentation of the matter that the acreage in the tract in the transitional stage should be reduced from 77½ acres of transitional acres and the value thereof reduced from $1600 per acre to $975 per acre.

The government now concedes that there is substantial evidence in the record to justify the court's original decision that the findings of the commissioners holding that the tract included 77½ acres of land which had its highest and best uses as transitional (agricultural-rural residential) land was not clearly erroneous.[1]   Rule 53(e)(2), Fed.R. Civ.P.   The court needs now to be concerned only with the second ground, i. e., whether the valuation of $1600 per acre for the transitional land should be affirmed.

A review of the record reveals that the landowner introduced five (5) witnesses on the issue of just compensation. Their estimates ranged from $520,650 (the landowner's estimate) to $293,750. The plaintiff introduced three (3) value witnesses. The just compensation ranged from $48,170 to $60,150. The commissioners awarded $79,-000.

The commissioners rejected the landowner's approach to "just compensation" with this observation: "[t]he commissioners have not been persuaded by defendant's witnesses that the highest and best use of this property is either recreational or for industrial purposes."

The values placed on the subject property by the landowner's witnesses were found to be unrealistic. These holdings and findings find ample support in the record.

On the other hand, the commissioners were impressed by the evidence produced by plaintiff and the market data approach used by its expert real estate witnesses. The commissioners remarked "[t]he mem-

---

1.  The government's rebuttal brief contains the following footnote:

> The Commission found the 137½ acres consisted of (high ground) A.   10 acres with B.   a residence thereon C.   37½ acres level pasture.   D.   40 acres level and sloping to bluff; (lower land) E.   50 acres lower end of slopes and against the river.   The Government originally contended that the finding of 87½ acres of land adaptable for residential purposes was excessive acreage, but now concedes that there is support in the record for a classification of 87½ acres as being adaptable for residential purposes.   Morgan characterized the 137½ acres as 72 acres level, high elevation, as transitional; 23 acres in the slopes as pasture; and 42½ acres as woodland.   Mr. Beard characterized 10 acres of the high ground as residential.   If there were 72 acres of high ground with 10 acres in residential, this would leave 62 acres of high ground as transitional.   However, Davidson classified 48 acres as being in the lower plateau (T346, 347), which would leave 89½ acres of higher ground.   The Government is now satisfied that Mr. Morgan characterized all of the high ground including the remote area to the bluff as being transitional and adaptable for residential use.

bers of the commission believe that the more convincing evidence has been produced by plaintiff's witnesses, and by personal observation of the subject property." The commissioners then concluded the highest and best use of the property, on the date of the taking, and considering such use in the reasonably foreseeable future thereafter to fall into three categories, as hereinbefore stated. The court has formerly held and plaintiff now concedes, that the holding of highest and best use by the commissioners is supported by the evidence and record in the action.

The commissioners assigned a value of $1600 per acre to the transitional (agricultural-rural residential) land. The plaintiff is taking 40 acres of this land; 37½ acres remain. The value assigned to the 40 acres involved in the taking is $64,000 ($1600 times 40), leaving $15,000 for the other 50 acres included in the taking.

Plaintiff's motion for reconsideration focuses upon the above mentioned $64,000 valuation of transitional land taken. The commissioners' report discusses fully and amply the evidence introduced by the parties, rejects the approach of the landowner and the evidence presented by him on the just compensation issue, and concludes "that the more convincing evidence has been produced by plaintiff's witnesses and *by personal observation of the subject property* (emphasis supplied). They do not elaborate or attempt to explain whether or in what manner, their personal observation of the land furnishes other or additional evidence as to the value. The court understands how a personal observation of the land might be relative to the question of highest and best use but is at a loss to understand its connection with value. It appears that the commissioners have relegated themselves to evidence of value received from the witnesses introduced by plaintiff.

The plaintiff takes the position that the commissioners should have accepted the testimony of its expert witness, Morgan, on value as well as on the question of the highest and best use of the land; that there is no justification for accepting a portion of his testimony and rejecting other portions.

The use of this approach results in placing a value on the 40 acres of transitional land of $39,000 (40 acres at $975 per acre) and reducing the award from $79,000 to $54,000. The court notes in this regard, however, as is shown by the court's original memoranda, the other two value witnesses used by plaintiff computed just compensation at $58,400 (Davidson) and $60,150 (Beard).

Plaintiff urges that the court has the power and should exercise that power to modify the report, and fix just compensation on the basis of the record and the evidence introduced before the commissioners. *United States v. 901.89 Acres of Land, etc., Tennessee,* 436 F.2d 395, 401 (6th Cir. 1970). In the case just cited, the court said "[w]e do not consider that the Commission, after viewing the involved property, could substitute its own idea of value for the probative evidence. . . . We therefore, reverse the judgment heretofore entered and remand the cause to the District Court for entry of a judgment fixing the just compensation to which the landowners, appellees herein, are entitled at the sum of $50,000."

The commissioners in the action sub judice have not articulated in any way the manner or means by which they fix the value of the transitional land at $1600 per acre, nor have they discussed the evidence which they believe supports the award. Under such circumstances, the court finds that before the report can be given further consideration on this issue, the commissioners must be given the opportunity to supplement their report with this information.

The procedure followed by the court is justified by the opinion of the Supreme Court of the United States in *United States v. Merz, et al,* 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629, reh. den. 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964), in which Mr. Justice Douglas, speaking for the Court, said:

Conclusory findings are alone not sufficient, for the commission's findings shall be accepted by the court "unless clearly erroneous"; and conclusory findings as made in these cases are normally not reviewable by that standard, even when

the District Court reads the record, for it will have no way of knowing what path the commissioners took through the maze of conflicting evidence. (Omit citation).

The commissioners need not make detailed findings such as judges do who try a case without a jury. Commissioners, we assume, will normally be laymen, inexperienced in the law. But laymen can be instructed to reveal the reasoning they use in deciding on a particular award, what standard they try to follow, which line of testimony they adopt, what measure of severance damages they use, and so on. We do not say that every contested issue raised on the record before the commission must be resolved by a separate finding of fact. We do not say that there must be an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based. The path followed by the commissioners in reaching the amount of the award can, however be distinctly marked. Such a requirement is within the competence of laymen; and laymen, like judges, will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it.

376 U.S. at 198, 199, 84 S.Ct. at 643.

■ The findings of the commissioners should contain their reasons for arriving at particular valuations—in the action sub judice the $1600 per acre valuation of the transitional land. The report fails in this respect. The evidence relied upon to establish the valuation should be given. This is necessary for the court to comprehend the path followed by the commissioners in reaching their decision, thus to enable this court to pass intelligently upon the issue presented on review. Also, should there be an appeal to the Court of Appeals, such an underpinning of the facts must be established in order for the appellate court to conduct a meaningful review of the judgment of this court under the clearly-erroneous rule. *See, United States v. Trout,* 386 F.2d 216, 223 (5th Cir. 1967) and the recent case of *Georgia Power Co. v. 138.20 Acres of Land,* 596 F.2d 644 (5th Cir. 1979).

The court will enter an order to remand the action sub judice to the commissioners, directing that they file a supplemental report stating their reasons for arriving at the valuation of $1600 per acre assigned to the transitional land, the evidence relied upon by them in fixing the amount, and such other information as may be pertinent to award.

The parties have fully explored the issue of "just compensation" by extensive evidence at the hearing before the commissioners and additional evidence does not appear warranted.

### THE RULE 60(b)(6) MOTION

There does not appear to be any reason which would justify relief from the operation of the judgment herein, except as mentioned in the court's decision to remand the action for a supplemental report from the commissioners. Under these circumstances, this motion is not well taken and should be overruled.